2015 IL App (1st) 140936

FIRST DIVISION
August 24, 2015

No. 1-14-0936

| | | |
|---|---|---|
| SMOKE N STUFF, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, a Municipal Corporation, | ) | |
| DEPARTMENT OF ADMINISTRATIVE | ) | No. 13 CH 10385 |
| HEARINGS, DEPARTMENT OF BUSINESS | ) | |
| AFFAIRS AND CONSUMER PROTECTION, | ) | |
| ROSEMARY KRIMBEL, Commissioner, | ) | |
| MAYOR'S LICENSING COMMISSION, RAHM | ) | |
| EMANUEL, Mayor of the City of Chicago, | ) | Honorable |
| | ) | Neil Cohen, |
| Defendants-Appellees. | ) | Judge Presiding. |

Justice Harris delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Smoke N Stuff, a licensed tobacco dealer in Chicago, Illinois, petitioned the circuit court for a writ of *certiorari* seeking review of the administrative decision of the city of Chicago's Department of Administrative Hearings and its Department of Business Affairs and Consumer Protection (collectively, the department). The department found that plaintiff violated the following tobacco related provisions of the Chicago Municipal Code (Code): (1) purchasing or receiving 1,127 packs of cigarettes that did not bear an unmutilated tax stamp affixed or canceled indicating payment of the proper cigarette tax to Chicago in violation of section 3-42-020(d) of the Code (Chicago Municipal Code § 3-42-020(d) (added Dec. 9, 1992));

(2) purchased or received 1,107 packs of cigarettes in a package not bearing an unmutilated tax stamp affixed or cancelled indicating payment of the proper cigarette tax to Cook County in violation of section 3-42-025 of the Code (Chicago Municipal Code § 3-41-025 (added Feb. 15, 2012)); (3) failed to provide for inspection a record of cigarette transactions in violation of section 4-64-150 of the Code (Chicago Municipal Code § 4-64-150 (added Dec. 9, 1992)); and engaged in an act of concealment in violation of section 3-42-020(e) of the Code (Chicago Municipal Code § 3-42-020(e) (added Dec. 9, 1992)).[1]  As a sanction, the department revoked plaintiff's license.  The circuit court of Cook County denied plaintiff's petition for writ of *certiorari*, and affirmed the findings of the department.

¶ 2    Plaintiff raises the following issues for our review: (1) whether, under the one-act, one-crime rule, it can be convicted of both section 3-42-020(d) of the Code for nonpayment of Chicago cigarette taxes (Chicago Municipal Code § 3-42-020(d) (added Dec. 9, 1992)) and section 3-42-025 of the Code (Chicago Municipal Code § 3-41-025 (added Feb. 15, 2012)) for the nonpayment of Cook County cigarette taxes; and (2) whether the department abused its discretion when it revoked its license as a sanction for its tobacco related violations.   We reject defendant's reliance on the one-act, one-crime rule and hold that the rule does not apply to municipal ordinance proceedings such as the case at bar.  We further hold that the department's revocation of plaintiff's license was not an arbitrary or capricious sanction because plaintiff attempted to conceal over 1,000 untaxed cigarette packs in a back room.   We therefore affirm the judgment of the circuit court of Cook County.

---

[1] Plaintiff named the following entities and government officials as defendants: the City of Chicago; its Department of Administrative Hearings; its Department of Business Affairs and Consumer Protection and its commissioner, Rosemary Krimbel; the Mayor's Licensing Commission; and Rahm Emanuel, the mayor of Chicago.   Defendants presented a unified defense, and, for the most part, we will refer to them collectively to avoid confusion.

No. 1-14-0936

¶ 3                                          JURISDICTION

¶ 4      On March 5, 2014, the circuit court denied plaintiff's petition for writ of *certiorari*.    On

March 28, 2014, plaintiff timely appealed.    Accordingly, this court has jurisdiction pursuant to

Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered

below.    Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 5                                          BACKGROUND

¶ 6      Defendants alleged plaintiff committed the following violations of the Code in July of

2012: (1) purchased or received 1,127 packs of cigarettes that did not bear an unmutilated tax

stamp affixed or canceled in violation of section 3-42-020(d) of the Code (Chicago Municipal

Code § 3-42-020(d) (added Dec. 9, 1992)); (2) purchased or received 1,107 packs of cigarettes in

a package not bearing an unmutiliated tax stamp affixed or cancelled in violation of section

3-42-025 of the Code (Chicago Municipal Code § 3-41-025 (added Feb. 15, 2012)); (3) failed to

provide for inspection a record of cigarette transactions in violation of section 4-64-150 of the

Code (Chicago Municipal Code § 3-42-020(e) (added Dec. 9, 1992)); and engaged in an act of

concealment in violation of section 3-42-020(e) of the Code (Chicago Municipal Code §

3-42-020(e) (added Dec. 9, 1992)).

¶ 7      The department conducted a hearing adjudicating this matter before a hearing

commissioner on January 29, 2013, and March 12, 2013.    Only one witness testified on either

date, John Gammal, a revenue investigator employed by the department.    On July 31, 2012,

Gammal inspected plaintiff's store at 2909 North Broadway in Chicago, Illinois, based on a

complaint that plaintiff was selling unstamped cigarettes out of the rear room of its store.

Gammal testified that the store was open, its doors were unlocked, and he entered through the

main entrance.    Gammal identified himself to the employee behind the register.    The employee

never stated his name, but Gammal described him as "of Indian or Pakistani descent." Gammal knew he was a store clerk because "[h]e was speaking to the customer on the side where the register was and he provided for me the licenses when I asked for them." Gammal informed the employee that he was there to conduct a premises check. Upon checking the rear storage room, Gammal found 1,127 unstamped packs of cigarettes in an 18-inch gap in the wall. Out of those 1,127 packs of cigarettes, 20 only had a Cook County tax stamp affixed to its packaging while the remaining 1,107 packs of cigarettes lacked the single tax stamp that serves as a joint tax stamp for both Cook County and Chicago. Gammal explained that the 20 packs found bearing only a Cook County tax stamp could only legally be sold in Cook County outside of the city of Chicago. Gammal also asked the employee to see the licensee's transaction book, but the employee did not comply.

¶ 8   At the hearing, plaintiff argued to the hearing commissioner it had been charged twice for the same offense. Specifically, both Chicago and Cook County were charging it for failing to buy a single stamp. In response, defendants argued that section 3-42-025 of the Code (Chicago Municipal Code § 3-42-025 (added Feb. 15, 2012)) specifies that it is a separate and distinct offense from other tax violations. Accordingly, defendants maintained "it's wholly permissible for the City to charge for the lack of a County tax stamp and the lack of a City tax stamp."

¶ 9   Plaintiff offered no testimony or other evidence at the hearing. In aggravation, defendants presented a 2007 Chicago stamp tax violation that resulted in a $1,000 fine, a 2009 violation for illegally posting a tobacco advertisement that resulted in a $200 fine, and a 2011 violation for selling tobacco products or accessories to a minor which resulted in a $500 fine. Plaintiff did not present any evidence in mitigation, but argued that its prior infractions were too remote in time and factually irrelevant to be considered in aggravation.

¶ 10   The hearing commissioner found Gammal's testimony to be credible and found plaintiff violated the following provisions of the Code: section 3-42-020(d) (Chicago Municipal Code § 3-42-020(d) (added Dec. 9, 1992)) for purchasing or receiving 1,127 packs of cigarettes that did not bear the proper Chicago tax stamp; section 3-42-025 (Chicago Municipal Code § 3-41-025 (added Feb. 15, 2012))[2] for purchasing or receiving 1,107 packs of cigarettes that did not bear the proper Cook County stamp tax; section 4-64-150 (Chicago Municipal Code § 4-64-150 (added Dec. 9, 1992)) for failing to provide a record of cigarette transactions for inspection; and section 3-42-020(e) (Chicago Municipal Code § 3-42-020(e) (added Dec. 9, 1992)) for engaging in an act of concealment.   The hearing commissioner rejected plaintiff's reliance on the one-act, one-crime rule finding that plaintiff's actions involved two acts: not having the proper Chicago stamps and not having the proper Cook County stamps.   The hearing commissioner further found "that this being a civil action the rules of criminal code are not applicable."   Accordingly, the hearing commissioner recommended that the appropriate discipline was revocation of plaintiff's license.   The commissioner of the department affirmed the findings of the hearing commissioner and ordered that plaintiff's license be revoked on April 26, 2013.

¶ 11   On April 18, 2013, plaintiff filed its petition for writ of *certiorari* before the circuit court, and the parties submitted briefs in support of their respective positions.   On March 5, 2014, the circuit court filed its memorandum and order denying plaintiff's petition for writ of *certiorari*

---

    [2] Plaintiff, in its brief before the circuit court in support of its petition to rescind the order of revocation, noted that the hearing officer, in his written findings, mistakenly found that plaintiff violated section 3-42-020(d) of the Code a second time for purchasing or receiving 1,107 packs of cigarettes that did not bear the proper Cook County tax.   Plaintiff acknowledged that the hearing officer's written findings were mistaken and that his written order should have read that plaintiff violated section 3-42-025 of the Code.   Plaintiff has raised no claim of error regarding this apparent clerical mistake before this court.

and affirming the department's findings and its order of revocation. In regard to plaintiff's argument pursuant to the one-act, one-crime rule, the circuit court held that section 3-42-025 of the Code (Chicago Municipal Code § 3-42-025 (added Feb. 15, 2012)) clearly states that it is a separate offense from other tax ordinances in the Code. The circuit court reasoned further that the record showed plaintiff committed two separate acts: possession of 1,127 packages of cigarettes without a Chicago tax stamp; and 1,107 packages of cigarettes without a Cook County tax stamp. The circuit court found that the sanction against plaintiff was not unreasonable or arbitrary because no mitigating circumstances were presented, plaintiff attempted to conceal over 1,000 packs of cigarettes, and plaintiff had been sanctioned in 2007 for a tax stamp violation. On March 28, 2014, plaintiff timely filed its notice of appeal asking this court to reverse the order of revocation entered against it.

¶ 12                                   ANALYSIS

¶ 13    Plaintiff raises two issues for our review: (1) whether, under the one-act, one-crime rule, it can be convicted of both section 3-42-020(d) of the Code for nonpayment of Chicago cigarette taxes (Chicago Municipal Code § 3-42-020(d) (added Dec. 9, 1992)) and section 3-42-025 of the Code (Chicago Municipal Code § 3-42-025 (added Feb. 15, 2012)) for the nonpayment of Cook County cigarette taxes; and (2) whether the penalty of revocation of its license is proper.

¶ 14    We initially point out that Smoke N Stuff sought review of the department's decision through the common law writ of *certiorari*. Typically, administrative decisions are appealed through the Administrative Review Law. 735 ILCS 5/3-101 *et seq.* (West 2014). When an administrative agency does not expressly adopt the Administrative Review Law and does not provide for alternative methods of reviewing its decisions, the common law writ of *certiorari* is an available method for litigants seeking circuit court review of administrative decisions.

*Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 333 (2009). Smoke N Stuff, however, improperly sought a writ of *certiorari* because section 2-14-102 of the Code specifies that appeals from decisions of the department, which rendered the decision appealed from here, should proceed under the Administrative Review Law. Chicago Municipal Code § 2-14-102 (added Apr. 29, 1998) ("Any final decision by the department of administrative hearings that a code violation does or does not exist shall constitute a final determination for purposes of judicial review and shall be subject to review under the Illinois Administrative Review Law, except as otherwise may be provided by law for decisions issued prior to the effective date of this ordinance."). Accordingly, Smoke N Stuff incorrectly sought a writ of *certiorari* when it should have proceeded under the Administrative Review Law.

¶ 15 Although Smoke N Stuff improperly sought a writ of *certiorari* as opposed to seeking review pursuant to the Administrative Review Law, we will review Smoke N Stuff's petition according to the Administrative Review Law because the standards of review "are essentially the same." *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). Accordingly, the Administrative Review Law provides that the scope of our review:

> "shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2012).

We review the administrative agency's decision, not that of the circuit court. *Outcom*, 233 Ill. 2d at 337. Furthermore, "[t]he applicable standard or review depends upon whether the question is one of fact, one of law, or a mixed question of fact and law." *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago*, 234 Ill. 2d 446, 463 (2009). Legal questions are thus subject to de novo review while questions of fact can be reversed if they are against the manifest weight of the evidence. *Id.* Mixed questions of law and fact are reversible if they are clearly erroneous. *Id.* The burden of proof is on the plaintiff in administrative proceedings. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532-33 (2006).

¶ 16                          One-Act, One-Crime Rule

¶ 17    Plaintiff first argues that, under the one-act, one-crime rule, it cannot be convicted of both section 3-42-020(d) of the Code for nonpayment of Chicago cigarette taxes (Chicago Municipal Code § 3-42-020(d) (added Dec. 9, 1992)) and section 3-42-025 of the Code (Chicago Municipal Code § 3-41-025 (added Feb. 15, 2012)) for the nonpayment of Cook County cigarette taxes. In response, defendants argue that plaintiff was found liable for two separate actions: nonpayment of the Chicago cigarette tax and nonpayment of Cook County cigarette tax. Defendants further argue that the one-act, one-crime rule is inapplicable here because neither of the separate offenses are lesser-included offenses.

¶ 18    Although both parties present arguments on the merits of the applicability of the one-act, one-crime rule to the facts of this case, we hold that the one-act, one-crime rule does not apply to municipal ordinance violations such as the ones at issue here. The one-act, one-crime rule prevents criminal defendants from being "convicted of multiple offenses based on the same physical act." *People v. Almond*, 2015 IL 113817, ¶ 47. Our supreme court first articulated

the rule in *People v. King*, holding "[p]rejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses." *People v. King*, 66 Ill. 2d 551, 566 (1977). Our supreme court has explained that the purpose of the rule, at its inception, "was to prevent prisoners from being prejudiced in their parole opportunities by multiple convictions and sentences carved from a single physical act." *People v. Artis*, 232 Ill. 2d 156, 164 (2009). The rule has evolved to the point where alleged violations of the rule are now amenable to review under the second-prong of the plain error doctrine because it concerns the fairness and integrity of the judicial process. *Id.* at 165. The rule has also been extended to juvenile delinquency proceedings. *Id.* at 168. The rule, however, "has never been viewed as a rule of constitutional dimension." *Id.* at 164.

¶ 19     On the other hand, Illinois courts have considered prosecutions in which a fine is sought for the violation of a municipal ordinance as a civil proceeding, albeit quasi-criminal in nature. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 21 (1991) (collecting cases). This is because such cases are "endowed with many of the aspects of noncriminal cases, *e.g.*, proof by a preponderance of evidence rather than proof beyond a reasonable doubt." *City of Chicago v. Hertz Commercial Leasing Corp.*, 71 Ill. 2d 333, 351-52 (1978); *City of Creve Coeur v. Pelletier*, 45 Ill. App. 3d 59, 61 (1977) ("The enforcement of an ordinance by a municipality is not a criminal proceeding which falls under the criminal code and therefore the rule is that a prosecution for the violation of a municipal ordinance to recover a fine or penalty from a defendant, while quasi-criminal in nature, is civil in form and is tried and reviewed as a civil proceeding and not as a criminal prosecution."). It follows that the one-act, one-crime rule, which aims to protect the

fundamental fairness of a criminal defendant's trial and a criminal defendant's parole rights; has no application to the civil municipal ordinance violation at issue here.[3] Furthermore, the hearing commissioner specifically found that the proceedings were civil, not criminal, and the record does not give any indication that the hearing commissioner applied the criminal standard of proof, *i.e.*, proof beyond a reasonable doubt.

¶ 20 There appears to be only one reported case applying the one-act, one-crime rule to municipal ordinance violations. In *Village of Sugar Grove v. Rich*, 347 Ill. App. 3d 689, 698 (2004), the court considered an appeal from convictions in multiple tickets for violating a municipal noise ordinance. The village prosecuted several different charges for the same act of playing loud music. The charges were distinguished only on the basis of different victims, each of whom was disturbed by the music. The court vacated the extra convictions, stating that the single act of playing the music justified only one conviction regardless of the number of victims. *Sugar Grove*, 347 Ill. App. 3d at 698-99. The *Sugar Grove* court cited no prior authority which applied the doctrine to municipal ordinance violations and, it, like the parties here, simply presumed it applied. We do not believe *Sugar Grove* to be well-reasoned on that point, and to the extent that it conflicts with our holding in this case, we respectfully decline to follow it. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008) (under the doctrine of *stare decisis*, "the opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels").

---

[3] The main similarity between criminal prosecutions and municipal ordinance violation prosecutions in this context occurs so rarely that it is essentially theoretical. A court can imprison someone for up to 6 months for violating a municipal ordinance, if the ordinance provides for such a penalty. Such prosecutions follow criminal procedural rules and require proof beyond a reasonable doubt. 65 ILCS 5/1-2-1.1 (West 2014). With that sole exception, the two types of cases are markedly different.

¶ 21    Applying the one-act, one-crime doctrine to municipal ordinance violations is highly problematic.    Not only does a municipal ordinance prosecution not parallel a criminal prosecution, but applying the rule to a municipal ordinance prosecution creates confusion since the same offense may violate both a criminal law, to be prosecuted by the state's attorney, and a local ordinance, to be prosecuted by the municipal prosecutor.    One example is in the field of liquor regulation.    Compare 235 ILCS 5/10-1 (West 2014) (second offense for selling liquor without a license is a Class 4 felony), and Chicago Municipal Code § 4-60-200 (amended Apr. 30, 2014) (selling liquor without a license is subject to a fine of up to $5,000).    See also *Village of Round Lake Beach v. Sams*, 96 Ill. App. 3d 683, 687-88 (1981) (rejecting driver's claim that *res judicata*, collateral estoppel, or compulsory joinder statute prevented him from being prosecuted both for a state criminal offense and for violating a village traffic ordinance).    Accordingly, we reject defendant's reliance on the one-act, one-crime rule and hold that it does not apply to municipal ordinance proceedings such as the case at bar.

¶ 22                                 Revocation Penalty

¶ 23    Plaintiff next argues that the penalty of revoking its license was unduly harsh, arbitrary, and an abuse of discretion because it was based on improper convictions under the one-act, one-crime rule, because the revenue inspector did not conduct a proper investigation and did not obtain evidence of a knowing violation, and because the hearing officer improperly considered prior tax ordinance violations as a factor in aggravation.    According to plaintiff, the prior infractions were unrelated, remote, and irrelevant.

¶ 24    In response, defendants argue that the decision to revoke plaintiff's license was not arbitrary, unreasonable, or unrelated to a legitimate government purpose.    Defendants point out that plaintiff committed 1,127 city tax stamp violations, 1,107 Cook County tax stamp violations,

concealed the untaxed and unstamped cigarette packs, and refused to allow inspection of its cigarette purchase record. Defendants further argue that plaintiff had a history of offenses, including a Chicago tax stamp violation, and failed to present any evidence in mitigation.

¶ 25 Initially, we note that a portion of plaintiff's argument is based on the premise that its offenses were improperly considered because they were barred by the one-act, one-crime rule. As previously discussed, however, plaintiff's offenses were not barred by the one-act, one-crime rule. We therefore reject plaintiff's reliance on the one-act, one-crime rule to argue that its sanction here is inappropriate. Additionally, plaintiff also argues that the sanction here was not proper because the revenue inspector did not conduct a proper investigation and did not obtain evidence of a knowing violation by plaintiff. Plaintiff, however, did not first present this argument during the administrative hearing. Arguments not presented during an administrative hearing are procedurally defaulted and cannot be raised for the first time on administrative review. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008). Plaintiff therefore is procedurally defaulted from arguing that its sanction was inappropriate based on the investigator's alleged failure to conduct a proper investigation or defendants' alleged failure to show a knowing violation by plaintiff. Accordingly, plaintiff's only remaining argument challenging the legitimacy of its sanction is that the hearing officer should not have considered evidence of prior infractions offered in aggravation. According to plaintiff, his prior infractions were remote in time or unrelated to its present offenses.

¶ 26 An administrative agency's decision regarding the appropriate sanction to administer to protect the public is given deference by reviewing courts. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 99 (1992). An agency's sanction determination, therefore, is a matter within its discretion. *Kazmi v. Department of Financial & Professional*

*Regulation*, 2014 IL App (1st) 130959, ¶ 21. Accordingly, we will only reverse an agency's sanction " 'if it is arbitrary and unreasonable or unrelated to the requirements of the service.' " *Launius v. Board of Fire & Police Commissioners of the City of Des Plaines*, 151 Ill. 2d 419, 435 (1992) (quoting *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105 (1983); *Kazmi*, 2014 IL App (1st) 130959, ¶ 21 ("A sanction will be found to be an abuse of discretion if it is arbitrary and capricious, or if the sanction is overly harsh in view of the mitigating circumstances.").

¶ 27    In this case, the department found plaintiff committed the following violations of the Code in July of 2012: violated section 3-42-020(d) (Chicago Municipal Code § 3-42-020(d) (added Dec. 9, 1992)) for purchasing or receiving 1,127 packs of cigarettes that did not bear the proper Chicago tax stamp; violated section 3-42-025 (Chicago Municipal Code § 3-41-025 (added Feb. 15, 2012)) for purchasing or receiving 1,107 packs of cigarettes that did not bear the proper Cook County stamp tax; failed to provide a record of cigarette transactions for inspection in violation of section 4-64-150 (Chicago Municipal Code § 4-64-150 (added Dec. 9, 1992)); and engaged in an act of concealment in violation of section 3-42-020(e) (Chicago Municipal Code § 3-42-020(e) (added Dec. 9, 1992)). Accordingly, Defendants found plaintiff in possession of over 1,000 packs of cigarettes that did not bear the proper tax stamp indicating payment of both city and county cigarette taxes. Plaintiff also failed to present the appropriate record of cigarette transactions and concealed the untaxed cigarette packs in the back room. Furthermore, plaintiff presented no mitigating evidence. After reviewing the record of plaintiff's actions in this case, we cannot say that revocation of plaintiff's license is "arbitrary and capricious, or *** overly harsh in view of the mitigating circumstances." *Kazmi*, 2014 IL App (1st) 130959, ¶ 21. Plaintiff was found in violation of not paying either the city or county taxes

for over 1,000 packages of cigarettes, and attempted to conceal the cigarettes in the back room. Accordingly, even without considering plaintiff's prior infractions, we hold that the agency did not abuse its discretion when it revoked plaintiff's license.

¶ 28   We also disagree with plaintiff's contention that plaintiff's prior infractions were too remote in time or irrelevant to its current violations.   In aggravation, defendants presented a 2007 Chicago stamp tax violation that resulted in a $1,000 fine, a 2009 violation for illegally posting a tobacco advertisement that resulted in a $200 fine, and a 2011 violation for selling tobacco products or accessories to a minor which resulted in a $500 fine.   Plaintiff's current violations were from July of 2012.   Accordingly, all of plaintiff's prior violations were tobacco-related and occurred within five years of his 2012 violations.   We hold that the circuit court did not abuse its discretion when it considered plaintiff's tobacco-related violations that occurred within five years of his current violations.

¶ 29                          CONCLUSION

¶ 30   The judgment of the circuit court of Cook County is affirmed.

¶ 31   Affirmed.