# Illinois Official Reports

## Appellate Court

---

### *Chaudhary v. Department of Human Services*, 2021 IL App (2d) 200364

---

| | |
|---|---|
| Appellate Court Caption | AYESHA CHAUDHARY, Plaintiff-Appellee, v. THE DEPARTMENT OF HUMAN SERVICES and GRACE B. HOU, in Her Official Capacity as Secretary of Human Services, Defendants-Appellants. |
| District & No. | Second District<br>No. 2-20-0364 |
| Filed | September 16, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 19-MR-1341; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Circuit court judgment affirmed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and David E. Neumeister, Assistant Attorney General, of counsel), for appellants.<br><br>Patricia Nelson and Sarah Megan, of Prairie State Legal Services, Inc., of West Chicago, for appellee. |

| Panel | PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion. |
| | Justices McLaren and Hutchinson concurred in the judgment and opinion. |

## OPINION

¶ 1     This appeal arises from the final administrative decision of the Secretary of Human Services, upholding the Illinois Department of Humans Services' (DHS) determination that it overpaid Supplemental Nutrition Assistance Program (SNAP) benefits to Ayesha Chaudhary. Following the final administrative decision upholding the overpayment determination, Chaudhary appealed to the circuit court of Du Page County, which reversed the decision. Defendants, DHS and Secretary Grace B. Hou (Secretary), raise two issues on this appeal: (1) whether the Secretary properly placed the burden of proof at the administrative hearing on Chaudhary to prove that DHS's overpayment determination was wrong and (2) whether the Secretary's decision upholding the determination was against the manifest weight of the evidence. We affirm the circuit court's reversal of the final administrative decision for the following reasons.

¶ 2                                    I. BACKGROUND

¶ 3     Chaudhary came to the United States from Pakistan in 2007 or 2008. She was married to Jon Mohammad Ramzan before coming to the United States, and they have three children together. Ramzan also has a child from a different marriage. In 2012, Chaudhary divorced Ramzan, and in January 2013, she moved to White Oak Lane in West Chicago (the White Oak address or residence). It is undisputed that, under separate accounts, Chaudhary and Ramzan received SNAP benefits from May 2015 through December 2017 (the overpayment period). During the overpayment period, both listed their SNAP benefits mailing address as the White Oak address.

¶ 4     On August 7, 2018, DHS sent Chaudhary a notice of overpayment for $21,821 in SNAP benefits for the overpayment period. That notice stated that the overpayment occurred because (1) she and her husband, Ramzan, received SNAP benefits on separate cases when they were required to be on a case together, and (2) Chaudhary failed to report some of Ramzan's income. Chaudhary sought administrative review of the SNAP overpayment determination.

¶ 5                               A. Administrative Appeal

¶ 6     The administrative law judge (ALJ) heard Chaudhary's appeal on September 30, 2019. At the hearing, Chaudhary was *pro se*, and attorney Ernesto Chairez represented DHS. At the outset, the ALJ told Chaudhary that, as the appellant, she had the burden of proof by a preponderance of the evidence and that "[t]his simply means that you have to prove why you should win and you have to prove it by 51% which is more likely than not." The ALJ continued that DHS customarily presents its case first, "especially with a case like this [where] there's so much information." Therefore, Chaudhary could present evidence and question Chairez after he presented DHS's case. Finally, the ALJ told her that she could present argument as she saw fit, but she did not have to, and the ALJ would consider just what DHS presented.

¶ 7        Chairez testified as follows. Chaudhary was the primary person listed on her SNAP account, and he contended that there were six people in her household during the overpayment period, including Ramzan. The only address DHS had for Ramzan was the same White Oak address as for Chaudhary. Chairez believed that Ramzan had a separate overpayment case, but he was also involved in this overpayment case.

¶ 8        Chairez provided an overview of various documents to the ALJ, including a two-part, approximately 200-page document for the Illinois Employment Services (IES) Underpayment/Overpayment Calculator. He also reviewed DHS's Bureau of Collections' (the BOC) recipient ledger inquiry from August 2, 2019. Chairez stated that the recipient ledger showed Ramzan's unreported income and that, according to the BOC, he moved out of the White Oak residence as of January 13, 2018. Before 2018, the BOC listed six residents living at the White Oak household.

¶ 9        Chaudhary asked to comment, and she explained that she and Ramzan had gotten a divorce in 2012 and that he had been living elsewhere. Ramzan told her that he had been using the White Oak address for mailing purposes. She asserted that her household was "four all the time" and that she wrote to DHS to tell them that her household size was four. Her four household members were herself and her three children, whose father was Ramzan.

¶ 10       Chairez responded that Ramzan should have been included in her household because he listed the White Oak address in connection with his income. Chairez stated that Ramzan had a separate SNAP case that listed the White Oak address where he was the head of household. Ramzan's household included two people: himself and his daughter from another marriage. Chairez clarified that Ramzan was not claiming the same household family members as Chaudhary claimed for her household, only that he was using the same address. Therefore, DHS's position was that the two separate households listed at the White Oak address should have been one household with six members.

¶ 11       Chaudhary interjected that Ramzan's daughter was going to the Benjamin School in another school district, which showed that he lived in another town and not at the White Oak residence. Chairez responded that "all of [Ramzan's] documents" listed him as living at the White Oak address, despite Chaudhary's claims to the contrary. Chairez proceeded to go through documents concerning Ramzan's income and then Chaudhary's income.

¶ 12       Chairez continued testifying that Ramzan registered multiple vehicles at the White Oak address. In addition, a February 2018 address verification request by the BOC listed Ramzan's address as the White Oak address. For his business, Yasmar, Inc., Ramzan also listed the White Oak address, and Chairez stated that "we know that he's using that [address] for mail purposes." As of a June 2019 filing, Ramzan was the president of Yasmar, and Chaudhary was the corporate secretary.

¶ 13       Chairez then cited a document showing Ramzan's address on Morton Road in Wayne Township (the Morton address). Chairez "[didn't] know what that is." Chaudhary added that it was not his current address but that he had lived there. On an IES summary page, the Morton address was listed as Ramzan's residence address and the White Oak address was listed as his mailing address. Chairez described it as "weird" and asked why Ramzan would use the White Oak address for mailing. Chaudhary responded that he had had trouble receiving mail at the Morton address, and therefore, he used the White Oak address to receive his mail.

¶ 14       After Chairez concluded his testimony, the ALJ addressed Chaudhary, telling her that Chairez had finished presenting DHS's overpayment information and she now had the

opportunity to ask Chairez any questions. The ALJ told her that she had the opportunity to present her argument, but she could also choose to say nothing.

¶ 15    Chaudhary offered that she and Ramzan divorced on April 2, 2012. At the time of the divorce, she was living at an apartment in Glendale Heights. She lived there until December 2012. Through Ramzan's nephew, Mohammed Shakeel, she found out about the White Oak residence. Shakeel managed the property and offered to rent a residence to her. She moved there with her children in January 2013. Other people also lived at the White Oak residence. Chaudhary's testimony was ultimately uncertain about whether Ramzan had previously lived at the White Oak residence, but she was certain that he was not living there when she moved in. She would not have moved in if he were still living there. Chaudhary was listed as secretary to Ramzan's company in 2006, and she had provided accounting services to another person at the corporation.

¶ 16    Chaudhary continued testifying that after she received the overpayment notice, she spoke to Ramzan. He told her that his mail had kept getting lost at his residences, and that was why he had provided the White Oak address as a mailing address. Before the overpayment notice, she was unaware that Ramzan received his mail at the White Oak residence because she did not personally go through the mail at the residence or receive Ramzan's mail. Instead, a man at the White Oak residence received the mail and distributed it—she received her mail from him. The White Oak residence had several floors with people living on different floors, and all were listed under the same address. The man who distributed the mail lived in the basement with another man, and she knew them as Nisakut [*sic*] and Khan. However, she could not recall their full names.

¶ 17    Chaudhary testified that she never actually lived with Ramzan. She was in her home country, Pakistan, for 34 years, and she did not live with him when she came to the United States. When immigrating to the United States, she first lived on Brendon Drive and then on Gladstone drive, both in Glendale Heights, before moving to the White Oak residence.

¶ 18    The ALJ allowed Chaudhary to have her final say at the hearing. Chaudhary mentioned that she worked only five to six months a year because she worked on income taxes. She asked that DHS reconsider its position because the overpayment determination was a significant amount of money, and she did not lie to them. At the hearing's conclusion, the ALJ left the record open for Chaudhary to submit more evidence.

¶ 19    Chaudhary supplemented the record with several additional documents. She submitted a letter from Ramzan and attached documents regarding proof of his residence. In the letter, he confirmed that they divorced on April 2, 2012, and that he did not live with Chaudhary. He asserted that he did not own the White Oak residence and moved out of the residence on November 12, 2012. He had moved with his daughter to the Morton address, and he enclosed multiple documents listing his residence at the Morton address: a May 2017 medical bill from Northwestern Medicine for his daughter; a proof-of-residency letter for the Benjamin School District from August 13, 2013; his daughter's transcript from Benjamin Middle School, dated June 4, 2019; a scan of his driver's license, issued August 2013 and expiring June 2017; a lease commencing in June 2015; pay stubs from Papa John's Pizza for August 2015; auto insurance cards for a 2001 Honda Accord and a 2001 Lexus Rx300 from October 2015; utility bills from 2015; and more.

¶ 20    Ramzan's letter continued that Shakeel had rented the White Oak residence to Chaudhary after he moved out. He wrote that, at his Morton address, he had not received several

documents from DHS and had failed to receive his social security letters. Therefore, he changed his mailing address to the White Oak address.

¶ 21 Chaudhary further submitted separate letters from Nizakat Khan and Sher Dill Khan, dated September 30, 2019, and notarized October 2 and 3, 2019, respectively. They each averred that (1) they resided in the basement at the White Oak residence, (2) they knew Chaudhary, and (3) Chaudhary resided in the upper level with her three children and nobody else. She also submitted a letter, dated October 2, 2019, from Shakeel, who wrote that he managed the White Oak residence and that Chaudhary had moved in on January 3, 2013. Finally, she submitted her April 2, 2012, judgment from the circuit court of Du Page County for dissolution of marriage. The record was closed on October 4, 2019, upon receipt of Chaudhary's exhibits.

¶ 22 The ALJ made the following findings of fact by a preponderance of the evidence. First, Chaudhary had received SNAP benefits from at least May 2015 with a total of four persons in her SNAP unit. In addition, she received a notice of overpayment from the BOC because (1) her husband had received SNAP benefits in a separate case when they were required to be in a case together, and (2) she had not reported his income. Also, the ALJ briefly discussed the two witnesses' testimony.

¶ 23 Based on the ALJ's findings, the Secretary issued her final administrative decision as follows. The issue on appeal was whether the BOC's decision to charge Chaudhary with $21,821 in SNAP overpayment was proper. She cited various records supporting that Ramzan was living with Chaudhary: (1) a Secretary of State record from September 2019 listing the White Oak address for Ramzan's corporation (incorporated in 2004) and showing him as president and Chaudhary as secretary, (2) a February 2018 response to a post-office-address-verification request that listed Ramzan's last known address as the White Oak address, and (3) Secretary of State records showing several of Ramzan's vehicles registered at the White Oak address.

¶ 24 Based on these records, the Secretary concluded that "it appears more likely than not that [Chaudhary and Ramzan] were residing together during the overpayment period." Because the preponderance of the evidence demonstrated that Ramzan was living in Chaudhary's SNAP unit during the overpayment period, his added income was unreported.

¶ 25 The Secretary next cited Chaudhary's offer into evidence of her judgment for dissolution of marriage. She concluded that the judgment confirmed that she and Ramzan were divorced as of April 2, 2012. However, the Secretary reasoned that "[w]hile they may no longer be married under the law, this alone does not overcome the evidence that [Chaudhary and Ramzan] are members of the same household, and that a SNAP overpayment occurred."

¶ 26 The Secretary then commented on Chaudhary's credibility. She found it highly unlikely that Chaudhary moved into the White Oak residence and did not know that her former husband had previously lived in and owned the residence. The Secretary noted that Ramzan submitted a letter stating that he had lived at the address until some point in 2012. Further, she found it unlikely that Chaudhary's housemates always collected the mail and that she was oblivious to Ramzan using the White Oak address for his mail. Finally, she found incredible Chaudhary's testimony that she and Ramzan never lived together given that Chaudhary had said in a prior written statement to DHS that she and Razman were divorced in April 2012 and "[s]ince then" have not lived together.

¶ 27 In sum, the Secretary found that DHS had provided sufficient documentation and calculations establishing that Ramzan resided at the White Oak residence and that an

overpayment had occurred. Accordingly, the Secretary upheld DHS's finding of a $21,821 SNAP overpayment for the overpayment period.

¶ 28                                    B. Circuit Court Proceedings

¶ 29    On December 6, 2019, Chaudhary filed her complaint for review of a final administrative decision by common-law *certiorari*. Chaudhary contended that the administrative determination was erroneous. In her supporting brief, she raised three issues: (1) whether the burden of proof at the hearing belonged to her or DHS, (2) whether DHS violated her due process rights by assigning her the burden of proof and by failing to notify her that she would be required to present a *prima facie* case, and (3) whether she was overpaid SNAP benefits.

¶ 30    The circuit court held a hearing on Chaudhary's complaint on June 4, 2020. It agreed with Chaudhary's argument that DHS bore the burden of proof. The circuit court distinguished a decision denying benefits from a decision to divest benefits from a recipient. The circuit court concluded that DHS would have the burden of proof in seeking to divest benefits. Further, the circuit court did not believe the evidence supported that Ramzan resided at the White Oak address. The circuit court emphasized that (1) many of the documents produced were from outside of the overpayment period, (2) Chaudhary and Ramzan were divorced since 2012, and (3) affidavits showed that Ramzan used the White Oak address only as a mailing address.

¶ 31    Defendants timely appealed.

¶ 32                                        II. ANALYSIS

¶ 33    Defendants argue that we should reverse the circuit court judgment because the Secretary properly placed the burden of proof at the administrative hearing on Chaudhary and that the evidence supported the Secretary's decision. On appeal, we review the administrative agency's decision, not the decision of the circuit court. *Lombard Public Facilities Corp. v. Department of Revenue*, 378 Ill. App. 3d 921, 927 (2008). In cases involving administrative review, the proper standard of review depends on whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50.

¶ 34    On appeal from an administrative decision, we review *de novo* questions of law. *Id.* Whether a party bears the burden of proof is a question of law. *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 627 (2006). Therefore, we review *de novo* whether the Secretary properly placed the burden of proof on Chaudhary.

¶ 35    An administrative agency's findings and conclusions on questions of fact are considered *prima facie* true and correct, and we will reverse those findings or conclusions only if they are against the manifest weight of the evidence. *Beggs*, 2016 IL 120236, ¶ 50. A factual determination is against the manifest weight of the evidence where the opposite conclusion is clearly evident. *Id.* We review the Secretary's decision upholding the overpayment determination under the manifest-weight-of-the-evidence standard.

¶ 36    Before reaching the merits of the burden-of-proof issue, we address defendants' contention that, by failing to raise them at the administrative hearing, Chaudhary forfeited her arguments in the circuit court challenging the burden of proof and alleging a due process violation. Defendants contend that the ALJ advised Chaudhary at the administrative hearing that she had the burden of proof by a preponderance of the evidence, and she did not object. Chaudhary

also did not raise due process concerns at the hearing. Rather, she raised these issues for the first time in her circuit court brief.

¶ 37 We reject defendants' forfeiture argument. Generally, an issue not first raised at an administrative hearing is forfeited. *Merchant v. Regional Board of School Trustees*, 2014 IL App (2d) 131277, ¶ 103. However, forfeiture is a limitation on the parties—not on us. *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 22. We can overlook forfeiture and address the merits of an issue to obtain a just result or maintain a sound and uniform body of precedent. *Id.* Here, the proper allocation of the burden of proof in the administrative proceeding is an issue of fairness, and addressing it will help ensure consistent application of precedent. In addition, the proper allocation of the burden of proof is relevant to our analysis of whether the Secretary's decision was against the manifest weight of the evidence. Finally, under the circumstances of this administrative proceeding, it is excessively harsh to have expected Chaudhary, a *pro se* administrative appellant, to object contemporaneously to a procedural error at the administrative hearing. The issue was raised and briefed before the circuit court, after she obtained representation. Accordingly, we will entertain the issue.

¶ 38                                     A. Burden of Proof

¶ 39 Defendant argues that the Secretary properly assigned the burden of proof to Chaudhary at her administrative hearing based on administrative regulations, common law principles, and sound policy reasons. Regarding the applicable administrative regulations, defendants argue that while the regulations do not specify which party bore the burden of proof, they as a whole support the burden being on Chaudhary. They cite section 10 of part 165 of the Illinois Administrative Code (Code) (89 Ill. Adm. Code 165.10 (2002)) concerning overpayments for financial assistance, food stamp benefits, or both. They point to the section's use of "shall" to emphasize the mandatory nature of recovery of overpayments. See 89 Ill. Adm. Code 165.10(a) (2002) ("If a person currently receives assistance of the type in which the overpayment occurred, the overpayment shall be collected under Subpart B or C, as the case may be, of this Part."). They argue that the mandatory nature is significant in showing the burden was properly on Chaudhary, analogizing the collection of overpayments to cases where the burden was on the person contesting license suspensions and revocations required by law. See *Arvia v. Madigan*, 209 Ill. 2d 520 (2004); *Smoke N Stuff v. City of Chicago*, 2015 IL App (1st) 140936. They point to several other instances where the regulations use the word "shall." Further, they contend that once DHS notifies a SNAP recipient of an overpayment, that person has the right to appeal the overpayment determination; if an appellant fails to proceed with the hearing, the appeal must be dismissed. 89 Ill. Adm. Code 14.60 (2001).

¶ 40 Defendants next argue that common law principles support placing the burden on Chaudhary because she initiated the administrative proceeding to challenge DHS's overpayment determination. They argue that cases like *Arvia* and *Smoke N Stuff* demonstrate that the plaintiff who initiates an administrative proceeding bears the burden of proving their case by a preponderance of the evidence, and we should apply that general principle here.

¶ 41 Defendants also argue that placing the burden of proof on the appellant in such proceedings serves important policy goals. They contend that a SNAP recipient might have a financial interest in defeating the overpayment charge and often possesses or controls much of the relevant information, such as the evidence here concerning Ramzan's residence. Therefore,

placing the burden on a recipient incentivizes the production of relevant evidence and clear testimony. They argue further that if DHS had the burden of proof, it would need to expand its prehearing procedures, including more formal discovery.

¶ 42     Lastly, defendants argue that placing the burden of proof on Chaudhary did not violate her procedural due process rights because DHS provided her with a fair hearing before a neutral tribunal. DHS made its initial determination, provided notice, and allowed Chaudhary to appeal. Defendants contend that simply assigning her the burden of proof did not violate due process in light of her opportunity to be heard, question the DHS representative at the hearing, and prove that she was not overpaid.

¶ 43     Chaudhary responds that the Secretary committed reversible error in assigning her the burden of proof. First, she relies on our decision in *Eastman v. Department of Public Aid*, 178 Ill. App. 3d 993 (1989), arguing it implicitly holds that DHS bore the burden of proof in the SNAP overpayment appeal hearing. Next, she argues that DHS should have had the burden at the hearing because it was the party seeking to change the status quo. She acknowledges the general rule, also argued by defendants, that when a statute is silent on the assignment of the burden of proof, the plaintiff ordinarily bears the burden. However, she argues that the ordinary rule is subject to exceptions, such as assigning the burden to the party seeking to change the status quo. See *Schaffer v. Weast*, 546 U.S. 49, 56 (2005). In most cases, that will be the plaintiff, but not always.

¶ 44     Chaudhary next disagrees with defendants that the assignment of the burden of proof hinges on whether agency action is mandatory versus discretionary. She argues that *Smoke N Stuff*, *Arvia*, and the cases that those cases rely upon do not support defendants' position but instead are consistent with the proposition that the party seeking to change the status quo bears the burden of proof.

¶ 45     Chaudhary also offers policy reasons to support her position that DHS should bear the burden. She argues that DHS is responsible for determining whether an overpayment occurred, and it has superior access to records to make that determination. The required investigation before DHS's determination should be enough evidence to establish overpayment. Therefore, it would need only admit this evidence into the record to support its case at a hearing. In addition, she argues that public aid recipients in legal proceedings are disadvantaged due to poverty, disability, age, education, or language. On the other hand, an experienced advocate always represents DHS at the hearings.

¶ 46     Lastly, Chaudhary argues that DHS violated her due process rights in several ways: (1) by placing the burden of proof on her, (2) by failing to send her notice that she would bear the burden of proof at the hearing, and (3) by failing to send her notice that included the correct reason for the alleged overpayment. Regarding the third alleged violation, she argues that the notice she received did not reference Ramzan living at the White Oak residence as a basis for the overpayment. Rather, it said that she and her husband were required to be on the same SNAP case together and that he had unreported income. Therefore, it was logical for Chaudhary to respond to the overpayment notice by submitting only her divorce judgment and be unprepared to rebut DHS's allegation that Ramzan was living at the White Oak residence.

¶ 47     We agree with Chaudhary that the burden of proof was on DHS to establish her SNAP overpayment by a preponderance of the evidence. The parties are correct that the Code is silent about allocating the burden of proof in an appeal from a SNAP overpayment determination. They also are correct that the default rule is that the plaintiff bears the burden of proof in an

administrative proceeding. See, *e.g.*, *Kouzoukas v. Retirement Board of Policeman's Annuity & Benefit Fund of the City of Chicago*, 234 Ill. 2d 446, 464 (2009). As we explain below, the default rule applied, but DHS was the plaintiff, not Chaudhary.

¶ 48    Contrary to defendants' argument, DHS was the party that initiated the proceedings to determine a SNAP overpayment. Regarding overpayments of SNAP benefits, under the Code, DHS "initiates action to recover overpayments." 89 Ill. Adm. Code 165.10 (2002). The record is clear that DHS first initiated an overpayment claim, determined overpayment, and then notified Chaudhary of its determination. Furthermore, Chaudhary's administrative hearing was not an initiation of a new action. Rather, her hearing was an appeal of DHS's overpayment determination against her, as was her right under the Code. See 89 Ill. Adm. Code 10.280 (2019) (SNAP beneficiary has right to appeal change in amount of SNAP benefits). Consistent with this case posture, DHS never designated Chaudhary as the plaintiff in its overpayment proceedings. The ALJ referred to her as appellant, and the Secretary's order designated her as the appellant in the caption and throughout the disposition.

¶ 49    On the other hand, Chaudhary's argument that the party who seeks to change the status quo should bear the burden of proof is well-taken. See 2 Kenneth S. Broun *et al.*, McCormick on Evidence § 337 (8th ed. 2020) ("The burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff *who generally seeks to change the present state of affairs* and who therefore naturally should be expected to bear the risk of failure of proof or persuasion." (Emphasis added.)). We have previously applied this general concept. In *Szewczyk*, we determined that a police chief properly bore the burden of proof to show that the department should hire him back to the police department, reasoning that he initiated the relevant proceeding by filing a petition for reinstatement. *Szewczyk v. Board of Fire & Police Commissioners*, 2011 IL App (2d) 100321, ¶ 62. We noted that, under the Illinois Municipal Code, the police chief was *not* entitled to a hearing where the Village would be required to show cause for his termination or allow him to present a defense. *Id.* In other words, the police chief in *Szewcyzk* was the party seeking to change the status quo of being discharged from the police department.

¶ 50    All the primary case law relied upon by the parties is consistent with the idea that, absent a statutory provision to the contrary, the party who brings a claim is the party who bears the burden of proof during the administrative proceedings on that claim. Defendants rely primarily on *Arvia* and *Smoke N Stuff*, but neither advances their arguments. First, *Arvia* is distinguishable because, there, the burden of proof at the relevant administrative hearing was provided for by the Code. *Arvia*, 209 Ill. 2d at 542 (citing 92 Ill. Adm. Code 1001.620 (2003)). Even disregarding the regulation assigning the burden of proof, the *Arvia* plaintiff initiated his administrative hearing to contest his driver's license suspension, which was suspended not pursuant to an administrative action initiated by the agency but by operation of law. *Id.* at 522-23 (the plaintiff's license was suspended pursuant to section 11-501.8 of the Illinois Vehicle Code (625 ILCS 5/11-501.8 (West 2000) (commonly referred to as the "zero tolerance law"))).

¶ 51    Turning to *Smoke N Stuff,* that case is not on point. The parties there were not disputing the burden of proof, and the appellate court did not address the burden of proof in any detail. Rather, the *Smoke N Stuff* court provided one sentence stating the general rule that "[t]he burden of proof is on the plaintiff in administrative proceedings." *Smoke N Stuff*, 2015 IL App (1st) 140936, ¶ 15. The court did not identify who was the plaintiff at the administrative hearing. Moreover, the case cited by *Smoke N Stuff* for the burden being on the plaintiff,

*Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497 (2006), is consistent with our holding. In *Marconi*, the police officer bore the burden of proof to establish his entitlement to a pension because he was the party who applied for disability pension benefits. *Id.* at 536.

¶ 52     Chaudhary relies primarily on *Eastman*, where the plaintiff was appealing an administrative decision determining that she had received a food stamp overpayment. *Eastman*, 178 Ill. App. 3d at 994. There, we held that the Department of Public Aid erred in admitting evidence of the food stamp overpayment because it lacked sufficient foundation. *Id.* at 998. In reversing, we determined that the error was substantial because the unfounded evidence was the only evidence establishing the food stamp overpayment. *Id.* We agree with Chaudhary that *Eastman* is consistent with the burden of proof being on DHS to show a SNAP overpayment. It supports the position that DHS must present some reliable evidence establishing an overpayment for the administrative decision to stand.

¶ 53     As to defendants' argument that the mandatory language of the Code supported the burden being on Chaudhary, we find the argument inapposite. As we have just discussed, the relevant question was not whether DHS had discretion to bring an action for overpayment; it was whether DHS initiated the action—which it did.

¶ 54     We also find defendants' policy arguments unavailing. SNAP recipients already have obvious financial incentives to contest an overpayment determination without bearing the burden of proof. In addition, our holding does not preclude shifting burdens of production, especially where the SNAP recipient is in sole possession of relevant information.[1] On the other hand, Chaudhary's policy arguments for placing the burden on DHS have merit. SNAP recipients are likely to be disadvantaged before DHS's involvement due to poverty, disability, lack of education, and more. Furthermore, we do not believe DHS would have to expand its prehearing procedures to meet its burden of proof. Under current procedures, DHS must first make an overpayment determination before there can be any appeal. Thus, at the appeal hearing, it need not necessarily do more than admit the evidence from its overpayment determination.

¶ 55     Thus, the general rule controls in this case: a plaintiff bears the burden of proof, and DHS is the plaintiff because it initiated an action against Chaudhary to recover its overpayment. In other words, DHS is properly the party that brought the claim or sought to change the status quo.

¶ 56     Having determined that the burden of proof lay with DHS, we next examine whether reversible error occurred. To be sure, the ALJ's comments at the administrative appeal were erroneous. Chaudhary did not have the burden to prove that, as the ALJ put it, she should win by 51%, which is more likely than not. However, it is unclear whether the burden was allocated to Chaudhary in substance or assigned only in form through the ALJ's threshold comments.

---

[1]We note that the term "burden of proof" can be elusive (see *Heiser v. Chastain*, 6 Ill. App. 3d 552, 558 (1972)), and it has historically encompassed two concepts: the burden of persuasion and the burden of production (*In re Marriage of Levites*, 2021 IL App (2d) 200552, ¶ 57). The burden of production is generally understood as the burden of presenting sufficient evidence to establish a fact or *prima facie* claim. *Id.* ¶ 59; *Schuttler v. Rurak*, 225 Ill. App. 3d 678, 684 (1992). In holding that DHS bore the burden of proof, we do not imply that a SNAP recipient may never bear a burden of production on their administrative appeal, but rather assure that the burden of persuasion remains with DHS throughout the appeal.

We note that the proceedings were inconsistent with the purported allocation of the burden of proof to Chaudhary. The ALJ conducted the hearing by having DHS present its case for overpayment first. She instructed Chaudhary that she had the option thereafter to question Chairez and present her argument, but that she did not have any obligation to do either. In fact, the ALJ said that if Chaudhary did not present anything, she would simply consider what DHS presented. Such a proceeding was consistent with DHS having the burden of proof, not Chaudhary, as the party with the burden would have to present at least some evidence at the hearing. See *Eastman*, 178 Ill. App. 3d at 998. As to the final administrative decision, it does not mention the allocation of the burden of proof but instead simply concludes that "the preponderance of the evidence demonstrates that [Ramzan] was living in the SNAP unit and that therefore, any income he added was not reported."

¶ 57    Nevertheless, we need not rest our disposition on whether a misallocation of the burden of proof resulted in reversible error. As discussed *infra*, we determine that the Secretary's decision was against the manifest weight of the evidence.

¶ 58    Lastly, we need not address the raised due process concerns. While we have determined that the burden of proof was with DHS, we do not determine whether the misallocation itself resulted in reversible error. Therefore, we cannot say if due process was violated. Further, our determination that the burden of proof lay with DHS moots the issue of whether DHS should have sent Chaudhary notice that she bore the burden of proof at the hearing. And finally, to the extent that DHS's notice should have included Ramzan's alleged residence at the White Oak address as a basis for its overpayment determination, the ALJ cured that error by leaving the record open and allowing Chaudhary to supplement the record on that issue. Leaving the record open provided Chaudhary a chance to respond, thus providing her a fair hearing on her administrative appeal. See *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 824 (2009) (administrative proceedings require due process, but due process is a flexible concept and requires only such procedural protections as justice and the particular situation demand).

¶ 59                                   B. Secretary's Decision

¶ 60    In light of our determination that DHS bore the burden of proof, we turn to defendants' argument that the final administrative hearing was not against the manifest weight of the evidence. They argue that the evidence showed that Ramzan lived with Chaudhary at the White Oak residence and that, therefore, the overpayment determination was correct. In support, they cite a variety of evidence from the hearing, including that (1) Ramzan's and Chaudhary's SNAP accounts listed the White Oak address, (2) a post office verification showed Ramzan's mailing address as the White Oak address, (3) Ramzan registered vehicles at the White Oak address, (4) his company, Yasmar, Inc., was registered at the White Oak address, and (5) property records showed he once owned the White Oak residence sometime between 2006 and 2010. They also contend that the Secretary had the role of resolving conflicts in the evidence. In doing so, she found Chaudhary incredible, and they argue we should defer to her determination.

¶ 61    Defendants also take issue with Chaudhary producing much of her evidence following the hearing, while the record was still open and only "after she gained the benefit of knowing the Department's testimony and the ALJ's comments." They claim that she had notice of the reason for the overpayment before the hearing. Finally, they argue that the Secretary did not

have to give equal or greater weight to the evidence Chaudhary produced following the hearing.

¶ 62 Chaudhary responds that the Secretary's decision was unsupported by competent evidence and must be set aside. She argues that much of the evidence that the ALJ relied on should have been excluded as immaterial or irrelevant because it purported to reference where Ramzan lived outside of the overpayment period. For instance, the post office address verification was from 2018 and therefore did not support that he lived at the White Oak address from 2015 to 2017. She further argues that the Secretary's credibility determination against her was an abuse of discretion, being based largely on minor discrepancies over immaterial issues. She contends that the opposite conclusion was clearly evident, citing her supplemental evidence that Ramzan did not live at the White Oak residence. The supplemental evidence that listed his Morton address included his driver's license, leases, bills, paychecks, and more.

¶ 63 We agree with Chaudhary that the Secretary's final administrative decision upholding the SNAP overpayment determination was against the manifest weight of the evidence. DHS's basis for the determination was that Chaudhary and Ramzan were supposed to be included in the same SNAP household but were not. Therefore, DHS bore the burden of proving that Chaudhary and Ramzan had to be included in the same SNAP unit or household. As we explain, the opposite conclusion was clearly evident.

¶ 64 A "SNAP household" or "SNAP unit" is defined generally as any of the following: (1) an individual living alone, (2) an individual living with others but who customarily purchases food and prepare meals for home consumption separate from others, or (3) a group of individuals who live together and customarily purchase food and prepare meals together or who are otherwise required to qualify for SNAP as a household or unit. 89 Ill. Adm. Code 10.120 (2013). The Code provides several instances in which separate household status shall not be granted, including for spouses of household members and for parents and their children under age 21. 89 Ill. Adm. Code 121.70(b) (1997). It is undisputed that Chaudhary and Ramzan were divorced during the overpayment period, and the Secretary did not base her decision on them being married. Instead, the sole basis was the determination that Ramzan lived at the White Oak residence. Because he was the father to Chaudhary's three children, he could not have held a separate household status if he lived at the White Oak residence. 89 Ill. Adm. Code 121.70(b)(2) (1997).

¶ 65 The evidence that the Secretary relied on in reaching her decision was largely from outside the overpayment period. To wit, the post office verification of Ramzan's last known address was from 2018; the secretary of state record for Yasmar, Inc., was from 2019; and the property records for Ramzan's ownership of the White Oak residence were from 2006 to 2010. As to the vehicles Ramzan registered at the White Oak address, Chairez identified three vehicles at the hearing: a 2016 Honda, a 2007 Toyota, and a 2007 Honda. However, he did not provide a year for the first two registrations and provided 2018 as the renewal year of the last.

¶ 66 Moreover, while DHS's evidence purported to show that Ramzan resided at the White Oak address, it could not establish in which White Oak unit he lived. The record clearly established that the White Oak address had multiple floors with different people living on different floors. To the extent that a mailing address establishes residence, Ramzan's mailing address could just as easily have shown that he lived on a separate floor from Chaudhary at the White Oak residence. Thus, the documentary evidence of Ramzan's mailing address alone was insufficient to make a *prima facie* case that he lived in the same unit as Chaudhary.

¶ 67       The Secretary did not consider whether Ramzan lived at the Morton address, despite the Morton address coming up several times during Chairez's testimony. At the hearing, after Chairez testified to the vehicles that Ramzan registered at the White Oak address, he turned to page 110 of DHS's document packet. He read from a 2018 printout description of Ramzan that listed the Morton address. He remarked, "I don't know what that is." Chaudhary explained that it was Ramzan's Morton address. Chairez continued reviewing the documents, and around page 124, he reached an IES summary page. He remarked: "Now this is what's weird. Mailing address is [the White Oak address], okay, residing address is [the Morton address]. Why would he use a mailing address [at the White Oak address]?" Chaudhary responded that Ramzan had not received his mail at the Morton address, because he was renting only a room there, and so he used the White Oak address for mailing purposes.

¶ 68       What is more, the Secretary gave scarcely any consideration in her written decision to Chaudhary's evidence submitted following the appeal hearing. We see no reason why the Secretary should not have considered this evidence. Thus, we reject defendants' argument that it somehow was entitled to less weight because it was submitted after Chaudhary benefited from hearing DHS's evidence and arguments. Contrary to their contention, before her appeal hearing, she did not know the ultimate reason for the overpayment. The overpayment notice never stated that she and Ramzan were required to be included in the same household based on him residing at the White Oak residence.[2] Furthermore, DHS bore the burden of proof. Therefore, it was fair and proper for the ALJ to allow Chaudhary to respond to DHS's evidence and arguments by supplementing the record after the hearing.

¶ 69       The supplemental evidence Chaudhary submitted was relevant and material to the issue of Ramzan's residence. She provided a letter from Ramzan, which corroborated her testimony at the hearing, including that he had changed his mailing address to the White Oak address after not receiving important mail at his Morton address. The only reference the Secretary made to Ramzan's letter—and, indeed, her only reference to any of Chaudhary's supplemental record—was to his statement that he had moved out of the White Oak address in November 2012. However, she did not address whether Ramzan's statement tended to show that he did not live at the White Oak residence during the overpayment period. Instead, she cited it only to impugn Chaudhary's credibility, comparing Ramzan's statement with Chaudhary's uncertain testimony about whether Ramzan had previously lived at the White Oak address.

¶ 70       Numerous documents listing his residence at the Morton address during the overpayment period were attached to Ramzan's letter. Those documents included medical bills, residential lease documents, a scan of his driver's license, and correspondence with his daughter's school. See *supra* ¶ 19. Chaudhary also included notarized letters from the men who lived in the basement at the White Oak address, attesting that they knew her and she lived with only her three children.

---

[2]By itself, evidence of Chaudhary and Ramzan residing together would not preclude separate SNAP unit statuses. See 89 Ill. Adm. Code 121.70(a)(2) (1997) (defining a SNAP household as an individual who lives with others but does not customarily purchase food and prepare meals with them). Chaudhary and Ramzan would have been precluded from claiming separate SNAP unit statuses if they were residing together *with their children*. 89 Ill. Adm. Code 121.70(b)(2) (1997).

¶ 71    We acknowledge that determinations of credibility and the Secretary's ultimate decision are due considerable deference.[3] Nevertheless, the failure to discuss the substance of any of Chaudhary's supplemental evidence in reaching a final decision was unreasonable. Her supplemental evidence was precisely the type of evidence DHS should welcome in assessing whether an overpayment occurred based on the residence of SNAP beneficiaries. In addition, DHS's evidence did not show that Ramzan consistently used the White Oak address, let alone resided there, during the overpayment period. Much of DHS's evidence was from outside the overpayment period, and the Secretary's final decision ignored evidence from the hearing wherein Ramzan listed the Morton address. Accordingly, the opposite conclusion that Ramzan did not reside at the White Oak residence was clearly evident.

¶ 72                              III. CONCLUSION

¶ 73    For the reasons stated, we affirm the judgment of the circuit court of Du Page County reversing the Secretary's final administrative decision.

¶ 74    Circuit court judgment affirmed.

---

[3]In making her findings of fact, the ALJ did not also make credibility determinations for the Secretary to adopt. Regardless of the propriety of the Secretary making her own credibility determinations, her decision upholding the overpayment was against the manifest weight of the evidence.