**2023 IL 127712**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127712)

AYESHA CHAUDHARY, Appellee, v. THE DEPARTMENT OF
HUMAN SERVICES *et al.*, Appellants.

*Opinion filed January 20, 2023.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, and Cunningham
concurred in the judgment and opinion.

Justices Rochford and O'Brien took no part in the decision.

## OPINION

¶ 1 In 2019, defendant, the Department of Human Services (Department), initiated
an investigation of plaintiff, Ayesha Chaudhary, a recipient of the Supplemental
Nutrition Assistance Program (SNAP), pursuant to section 12-4.4 of the Illinois
Public Aid Code (305 ILCS 5/12-4.4) (West 2018)) and determined that she

received overpayments in the amount of $21,821. The Department began an overpayment collection process pursuant to Title 89, section 165.10(a), of the Illinois Administrative Code (Code) (89 Ill. Adm. Code 165.10(a) (2002)). Chaudhary challenged the determination by filing an agency appeal, and the administrative law judge (ALJ) found that the overpayment determination was valid. Chaudhary sought review by the other defendant, Grace B. Hou, the Secretary of Human Services (Secretary), who found that there was sufficient evidence presented by the Department to establish that the overpayment had occurred. Chaudhary filed a writ of *certiorari* for administrative review in the circuit court. The circuit court of Du Page County reversed the Secretary's final administrative decision, finding that the evidence did not support the determination of a SNAP overpayment. Defendants filed an appeal pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017)), and the appellate court affirmed the judgment of the circuit court. See 2021 IL App (2d) 200364. This court allowed defendants' petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021). We also allowed the Shriver Center on Poverty Law, Equip For Equality, Land of Lincoln Legal Aid, Legal Aid Chicago, and Legal Council For Health Justice to file an *amici curiae* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). For the reasons that follow, we affirm the judgments of the lower courts.

## I. BACKGROUND

### A. Underlying SNAP Overpayment Proceedings

Chaudhary arrived in the United States from Pakistan in 2007 or 2008. She married Jon Mohammad Ramzan while in Pakistan, and they have three children together. Ramzan also has a daughter from a different marriage. In 2012, Chaudhary divorced Ramzan, and in January 2013, she moved to White Oak Lane in West Chicago, Illinois (White Oak address). Chaudhary received SNAP benefits for herself and the three children she has with Ramzan. He separately received benefits for himself and his daughter. Under separate accounts, Chaudhary and Ramzan received SNAP benefits from May 2015 through December 2017 (the overpayment period), both listing the White Oak address as their SNAP benefits mailing address.

¶ 5        In December 2017, Ramzan stopped receiving SNAP benefits at the White Oak address when he changed his mailing address to Morton Road in West Chicago, Illinois (Morton Road address), which was previously listed as his residence in the Department's records. His address change alerted the Department that he and Chaudhary had each been receiving benefits on their separate accounts at the White Oak address. The separate payments to Chaudhary's account (four recipients) and Ramzan's account (two recipients), cumulatively, were more than would have been paid if all six recipients had been on one account.

¶ 6        The Department initiated an investigation and determined that Ramzan lived at the White Oak address during the overpayment period from May 2015 through December 2017. Based on its investigation, the Department concluded that Chaudhary, as the primary account holder at the White Oak address, had received overpayments totaling $21,821. The Department then began the overpayment collection process pursuant to section 165.10 of the Code (89 Ill. Adm. Code 165.10(a) (2002)).

¶ 7        On August 7, 2019, the Department sent Chaudhary a notice of overpayment. The notification informed Chaudhary that she had received an overpayment of $21,821 in SNAP benefits from May 2015 to December 2017. The notification specified that the overpayment "occurred because you and your husband, Jon Ramzan, received SNAP benefits on separate cases when you were required to be on a case together, and you did not report Jon's income from social security or Ozark Pizza Company." The notification apprised Chaudhary that she was "responsible for repaying the SNAP overpayment."

¶ 8        Chaudhary challenged the determination by filing an agency appeal. Chaudhary claimed that she and Ramzan had been divorced since 2012 and Ramzan never lived with her at the White Oak address. She also maintained that her SNAP account had always only included four individuals, herself and her three children.

¶ 9                                    B. Agency Appeal

¶ 10       Prior to the administrative hearing, there was a prehearing review of the Department's documentary evidence, which was attended by Chaudhary and the department's representative, Ernesto Chairez, a financial recoveries coordinator

and a Department employee of 13 years. 89 Ill. Adm. Code 14.11 (2001) (Pre-Hearing Meeting); *id.* § 14.12 (Review of Case Record). At the review, Chaudhary received from the Department a statement of facts and more than 300 pages of documents. Chaudhary, in support of her position, submitted a letter stating that Ramzan did not live with her and a copy of her divorce decree from 2012. After the prehearing meeting, Chairez forwarded Chaudhary's submissions to the Bureau of Collections (BOC), which conducted a further investigation. Chaudhary received the results of this subsequent investigation on the morning of the administrative hearing, September 30, 2019.

¶ 11        An administrative law judge (ALJ) heard Chaudhary's appeal via a telephonic conference. At the hearing, Chaudhary appeared *pro se*, and the Department was represented by Chairez. Initially, the ALJ told Chaudhary that, as the appellant, she had the burden of proof by a preponderance of the evidence and that "[t]his simply means that you have to prove why you should win and you have to prove it by 51% which is more likely than not." The ALJ further informed Chaudhary that in a case like this, where there is so much information, the Department customarily presents its case first.

¶ 12        Chairez testified that Chaudhary was the primary account holder on her SNAP account and that there were six people in her household during the overpayment period. He stated that the White Oak address was the only address the Department had for Ramzan, and there were six residents at that address. According to the BOC, Ramzan moved out of the White Oak residence as of January 13, 2018.

¶ 13        Chairez then reviewed the Department's exhibits, which consisted of various documents, including an approximately 200-page submission from the Integrated Eligibility System (IES) underpayment/overpayment calculator. That submission indicated that the overpayment was repeated month to month during the overpayment period. Chairez also pointed out that the BOC report from August 2, 2019, established unreported income for Ramzan.

¶ 14        Chaudhary clarified that she had been divorced from Ramzan since 2012, and he had been living elsewhere. After receiving the Department's notification, she contacted Ramzan and was informed that he was using the White Oak address for mailing purposes. She stated that her household was "four all the time," herself and her three children, and that she wrote to the Department and informed it of the same.

¶ 15    Chairez attested that Ramzan had a separate SNAP account where he was the head of the household that included his daughter from another marriage. Chairez asserted that the Department's position was that, because Ramzan used the same address as Chaudhary, the two separate households should have been one household with six members.

¶ 16    Chaudhary interposed that Ramzan's daughter attended school in another district, which showed that he lived in another town. Chairez again stated that all of the Department's documents listed Ramzan as living at the White Oak address. Chairez then continued his review of the Department's exhibits documenting Ramzan's and Chaudhary's income.

¶ 17    Chairez next addressed numerous documents that purported to establish that Ramzan lived with Chaudhary at the White Oak address during the relevant time period, including (1) SNAP payments sent to Chaudhary and Ramzan on separate accounts at the address from May 2015 to December 2017, (2) post office verification of the address as Ramzan's mailing address as of February 9, 2018, (3) state records showing both Chaudhary and Ramzan with vehicles registered to the address in 2018, (4) registration of Ramzan's corporation, Yasmar, Inc., at the address with Ramzan and Chaudhary listed as officers filed with the Illinois Secretary of State for the year 2019, (5) property records listing Ramzan as owner of the White Oak property in 2004 and 2006, and (6) Social Security records showing the receipt of benefits for Ramzan's daughter from a prior marriage, at the address.

¶ 18    Chairez then focused on an IES summary page registering the Morton Road address as Ramzan's residence and the White Oak address as his mailing address. According to Chairez, this was "weird," and Chairez asked why he would use the White Oak address for mailing. Chaudhary replied that Ramzan had had trouble receiving mail at the Morton Road address.

¶ 19    After Chairez concluded presenting the Department's evidence, the ALJ addressed Chaudhary, informing her that now was her chance to ask Chairez any questions. Chaudhary was also informed that she could present her argument or choose to say nothing.

¶ 20    Chaudhary affirmed that she and Ramzan had divorced and she had submitted her divorce decree establishing that they divorced in 2012. She testified that Shakeel, a relative of Ramzan's, told her about the White Oak residence and she started living at White Oak with her three children in 2013. Chaudhary was not sure if Ramzan had ever lived there, but he was not living there when she moved in. She acknowledged that she was listed as the secretary of Ramzan's company in 2006.

¶ 21    After receiving the overpayment notice, Chaudhary spoke with Ramzan, and he acknowledged that he used the White Oak address as a mailing address. Chaudhary stated that she had not been aware of this, explaining that there were other residents at the address, living on different floors, one of whom would receive and distribute the mail.

¶ 22    Chaudhary continued testifying that she was in her home country, Pakistan, for 34 years, and she had not lived with Ramzan when she came to the United States. She had resided in Glendale Heights prior to moving to the White Oak address in 2013. She also stated that she occasionally worked on income taxes five to six months a year. In closing, Chaudhary asked the Department to reconsider its position because the overpayment was a significant amount. At the end of the hearing, Chaudhary requested time to submit additional documents showing that Ramzan lived elsewhere, and the ALJ held the record open for four days.

¶ 23    Chaudhary supplemented the record with evidence that Ramzan did not live at the White Oak address during the overpayment period. She presented a letter from Ramzan, which stated that he had moved out of the White Oak address in 2012 and had moved with his daughter to the Morton Road address. His letter continued that his relative, Shakeel, rented the residence to Chaudhary after he moved out. Ramzan explained that, once he moved to the Morton Road address, he had not received several documents from the Department and Social Security. After contacting the Department regarding the missing letters, he was advised that he could provide a different mailing address than his residence. Ramzan then changed his mailing address to White Oak.

¶ 24    Ramzan enclosed numerous exhibits listing his residence as Morton Road that included the following: (1) a state of Illinois driver's license issued in August 2013, which expired in June 2017; (2) an internal Department record, showing Ramzan listed White Oak as a mailing address and Morton Road as his residence address

with the Department; (3) a residential lease beginning June 1, 2013, and ending May 31, 2015; (4) a residential lease beginning June 1, 2015, and ending August 31, 2020; (5) a proof-of-residency letter from the Benjamin School District for August 13, 2013; (6) an approval letter from Benjamin School District for free meal services for the 2015-16 school year; (7) an automobile insurance card effective September 3, 2015, through October 19, 2015; (8) a copy of a check from Allstate Insurance dated December 17, 2016; (9) electricity bills for service dated between 2013 and 2016; and (10) a 2017 medical bill from Northwestern Medicine.

¶ 25 Chaudhary also tendered notarized letters from the other tenants, Nizakat Khan and Sher Dill Khan. They averred that (1) they resided in the basement at the White Oak address, (2) they knew Chaudhary, and (3) Chaudhary resided in the upper level with her three children and nobody else. In addition, she submitted a letter from Shakeel dated October 2, 2019, acknowledging that he managed the White Oak address and that Chaudhary had moved in on January 3, 2013. The record was closed on October 4, 2019, after receipt of Chaudhary's submissions.

¶ 26 Thereafter, the ALJ rendered the following findings of fact based on a preponderance of the evidence: (1) Chaudhary had received SNAP benefits from at least May 2015 with a total of four people in her assistance unit; (2) she received a notice of overpayment from the Department informing her that she had received a $21,821 SNAP overpayment, and she was responsible for repaying the same because (a) she and her husband had received SNAP benefits in separate cases when they were required to be in a case together and (b) she had not reported his income. The ALJ upheld the Department's overpayment determination.

¶ 27 In summary fashion, the ALJ discussed Chaudhary's testimony without making a credibility determination. She reiterated that Chaudhary arrived from Pakistan in 2007 or 2008, she and Ramzan have children together but never lived together, and they were divorced in 2012. Ramzan's family member helped Chaudhary find her current residence, where she has lived since 2013, and she did not know that Ramzan had once lived at the White Oak address or that he was using the address as his mailing address. There are two men who also live at the address in a separate living quarter, and one collects and distributes all the mail. Chaudhary was aware that she was added to Ramzan's corporation in 2006, and to earn extra money, during the tax season, she works filing income taxes for individuals. Chaudhary

sought agency review by the Secretary.

¶ 28                    C. Secretary's Final Administrative Decision

¶ 29    Based on the ALJ's findings, the Secretary issued her final administrative decision, determining that the decision to charge Chaudhary with $21,821 in a SNAP overpayment was proper. The Secretary relied on documents from the Department's investigation showing the White Oak address as Ramzan's address, including the Secretary of State records listing Ramzan and Chaudhary as officers of Yasmar, Inc., a post office address verification, and state vehicle registration records, to find that it was more likely than not that both lived there during the overpayment period. As a result, the Secretary ruled Ramzan should have been included on Chaudhary's account and his income reported.

¶ 30    The Secretary specifically addressed the fact that the notice of overpayment stated that Chaudhary and her husband received SNAP benefits in separate cases and Chaudhary had undeclared income from her husband. The Secretary acknowledged Chaudhary's divorce decree, but according to the Secretary, although they may no longer be married under the law, that did not overcome the evidence that they are members of the same household and that a SNAP overpayment occurred.

¶ 31    The Secretary then asserted that Chaudhary's testimony "lacks credibility." The Secretary noted that "[i]t is highly implausible" that she did not know that Ramzan once owned and lived at the White Oak address, "it is unlikely" that others collected the mail every day and that she was "clueless" or "completely oblivious" to the fact that Ramzan received his mail there, and her testimony that she and Ramzan never lived together during their marriage contradicted her written statement that they had not lived together "since" their divorce.

¶ 32    The Secretary concluded that the Department had provided sufficient documentation and calculations establishing that Ramzan resided at the White Oak address and that an overpayment had occurred. The Secretary upheld the Department's decision to charge Chaudhary with a $21,821 SNAP overpayment.

¶ 33                          D. Circuit Court Decision

¶ 34        Subsequently, Chaudhary filed a common-law writ of *certiorari* in the circuit
court seeking review of the Secretary's final administrative decision. The circuit
court granted the writ and reversed the Secretary's final administrative decision.
The circuit court found that the Department had the burden of proof regarding
overpayment of SNAP benefits where it is seeking to divest a recipient of
previously granted benefits.

¶ 35        Further, the court found that the Department had not sustained its burden of
proof and the evidence did not establish that Ramzan, Chaudhary's ex-husband,
resided at the White Oak address. Specifically, the court determined that (1) many
of the documents produced by the Department were from outside of the
overpayment period; (2) Chaudhary and Ramzan had been divorced since 2012,
with the time in issue being between May 2015 and December 2017; and (3) the
affidavits plus all of the other documentation clearly showed that Ramzan used the
White Oak address only as a mailing address and did not reside there.


¶ 36                          E. Appellate Court Decision

¶ 37        Defendants filed an appeal of the circuit court's order. The appellate court
affirmed, holding that the Department carried the burden of proof to establish a
SNAP overpayment. 2021 IL App (2d) 200364, ¶ 47.

¶ 38        The court agreed with the parties that the Code was silent regarding allocation
of the burden of proof in an appeal from a SNAP overpayment determination. *Id.*
The appellate court recognized that the Department first initiated the overpayment
claim, determined the overpayment amount, and then notified Chaudhary of its
determination. *Id.* ¶ 48. Based on the above circumstances, the appellate court
concluded that Chaudhary's administrative hearing was not an initiation of a new
action. *Id.* Rather, her hearing was an appeal of the Department's overpayment
determination against her, as was her right under the Code. *Id.* The court observed
that its conclusion was consistent with *Eastman v. Department of Public Aid*, 178
Ill. App. 3d 993 (1989), which indicated that the burden of proof is with the agency
because the agency must present some reliable evidence establishing an

- 9 -

overpayment for the administrative decision to stand. 2021 IL App (2d) 200364, ¶ 52 (citing *Eastman*, 178 Ill. App. 3d at 994).

¶ 39    According to the appellate court, where the statute is silent regarding the burden of proof, the general rule controls that the plaintiff bears the burden of proof. The court determined that, in this case, the Department is the plaintiff because it initiated the action against Chaudhary to recover its overpayment. *Id.* ¶ 55.

¶ 40    In addressing the evidence, the appellate court held that the Department's decision to charge Chaudhary with an overpayment and the Secretary's denial of her appeal were against the manifest weight of the evidence. *Id.* ¶ 63. The court observed that the evidence that the Secretary relied on in reaching her decision was largely from outside the overpayment period. *Id.* ¶ 65.

¶ 41    The appellate court recognized that "the Secretary gave scarcely any consideration in her written decision to Chaudhary's evidence submitted following the appeal hearing." *Id.* ¶ 68. In the court's view, there was no reason why the Secretary should not have considered this evidence. *Id.* The appellate court found that the failure to discuss the substance of any of Chaudhary's supplemental evidence in reaching a final decision was unreasonable. *Id.* ¶ 71. In addition, the Department's "evidence did not show that Ramzan consistently used the White Oak address, let alone resided there, during the overpayment period." *Id.* Accordingly, the appellate court held that the opposite conclusion, that Ramzan did not reside at the White Oak address, was clearly evident. *Id.* The appellate court affirmed the judgment of the circuit court reversing the Secretary's final administrative decision. *Id.* ¶ 73. Defendants filed a petition for leave to appeal to this court.

¶ 42                                II. ANALYSIS

¶ 43    Defendants argue that the lower courts erred in placing the burden of proof on the Department in this administrative hearing addressing a SNAP overpayment determination. Defendants acknowledge that the provisions governing the Department's SNAP administrative hearings do not specifically place the burden of proof on either party, but they argue for application of the default rule that the party who initiates the action carries the burden, and here that is Chaudhary. In addition, defendants contend that the Code as a whole, specifically its appeal

process, implicitly places the burden of proof on Chaudhary. Defendants also contend that the burden should rest with the party who has access to relevant information and Chaudhary possesses the evidence concerning Ramzan's residence. Defendants posit that placing the burden on Chaudhary does not violate her due process rights because she was afforded a fair hearing before a neutral tribunal. Defendants argue that the Secretary's decision was not against the manifest weight of the evidence because there was evidence in the record to support the finding that Ramzan lived with Chaudhary at the White Oak address during the relevant time period. Finally, defendants maintain that the Secretary's credibility determination regarding Chaudhary is due substantial deference and should be upheld.

¶ 44        Chaudhary responds that the lower courts properly found the Department carries the burden of proof when divesting a recipient of SNAP benefits. Chaudhary agrees that the statute is silent as to who carries the burden of proof and the default rule applies. According to Chaudhary, it is the Department that initiated the action to divest her of a benefit and, therefore, carries the burden of proof. Chaudhary also argues that the Code and the relevant provisions regarding the appeal process do not implicitly place the burden on a SNAP benefit recipient. Chaudhary maintains that the Department is responsible for determining whether an overpayment occurred and has superior access to relevant public records to make that determination. Chaudhary argues she was not afforded due process, as she was at a disadvantage at the hearing because she did not have notice that she bore the burden of proof and did not receive prior notice that Ramzan's alleged residence at the White Oak address was the reason for the overpayment determination. Chaudhary maintains that the Secretary's decision was against the manifest weight of the evidence because it was unsupported by any competent evidence and that the opposite conclusion was clearly evident—Ramzan did not live at White Oak during the overpayment period but used it only as a mailing address.

¶ 45                                A. Standard of Review

¶ 46        The determination of which party bears the burden of proof in the context of an administrative proceeding presents a pure question of law that we review *de novo*. *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 627 (2006). To ascertain

whether the Code implicitly places the burden of proof on the benefit recipient requires us to construe the relevant sections of the Code. Statutory construction also presents a pure question of law that we review *de novo*. *Robinson v. Village of Sauk Village*, 2022 IL 127236, ¶ 17.

¶ 47　　　　The primary objective in construing a statute is to ascertain and give effect to the intention of the legislature. *Id.* The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Id.* A statute is viewed as a whole; therefore words and phrases are construed in light of other relevant statutory provisions and not in isolation. *United States v. Glispie*, 2020 IL 125483, ¶ 10. A court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or the other. *Id.*

¶ 48　　　　　　　　　　　　　　B. Burden of Proof

¶ 49　　　　1. Where the Statute Is Silent, the Default Rule That the
Party Who Initiated the Action Applies in
Administrative Proceedings to Divest a
Recipient's Benefit

¶ 50　　　　Defendants contend that an agency should not bear the burden of proof where the statutes or regulations do not assign the burden of proof to either party. Defendants further contend that their internal process to determine whether an overpayment has occurred and notification of an overpayment to the recipient is not a proceeding that initiates an action. Rather, it is the benefit recipient's request of an appeal that is the affirmative step that starts the action.

¶ 51　　　　Defendants rely on *Schaffer v. Weast*, 546 U.S. 49, 56 (2005), for the proposition that, where the relevant statute does not allocate the burden of proof, the default rule is that the party who initiates the action carries the burden.

¶ 52　　　　Defendants contend that *Schaffer* supports their position that SNAP overpayment collection procedures implicitly place the burden on the recipient of the benefit, rather than the Department. Defendants point out that in *Schaffer* the United States Supreme Court explained that placing the burden of proof on an

- 12 -

agency assumes that "every [agency action] is invalid until the [agency] demonstrates that it is not." *Id.* at 59. The Court rejected this assumption, reasoning that "Congress appears to have presumed instead that, if the [agency's] procedural requirements are respected, [individuals] will prevail when they have legitimate grievances." *Id.* at 60. Thus, the Court determined that the plaintiffs bore the burden of persuasion regarding the essential aspects of their claims. *Id.* at 57.

¶ 53    Defendants maintain that Illinois law follows this default rule, regardless of whether the party initiating the administrative appeal seeking relief from the agency's action either (1) first claimed and was denied a benefit or privilege or (2) had a government agency revoke or suspend an existing benefit or privilege. We disagree.

¶ 54    Defendants' reliance on *Schaffer* is misplaced. In *Schaffer*, the Court explained the difference between the burden of persuasion, *i.e.*, which party loses if the evidence is closely balanced, and the burden of production, *i.e.*, which party bears the obligation to come forward with the evidence at different points in the proceeding. *Id.* The Court explained that its decision governed the burden of persuasion. *Id.* at 56.

¶ 55    The *Schaffer* Court determined that the case concerned the burden of persuasion because the ALJ deemed the evidence in " 'equipoise.' " *Id.* at 55. The Court explicitly stated that it would "hold no more than we must to resolve the case at hand." *Id.* at 62. The Court found that the burden of persuasion in an administrative hearing challenging an individual education program is properly placed upon the party seeking relief, whether that is the parent on behalf of the disabled child or the school district. *Id.* The parties in the case before us are in a different procedural posture.

¶ 56    In the case at bar, Chaudhary's application for benefits had been approved, and she had been receiving SNAP benefits for herself and her three children. The Department later initiated proceedings to recover alleged overpayments made to Chaudhary. The Department, through notification of a change in mailing address for Ramzan, became aware that two recipients were using the same mailing address. With this information, the Department made the decision to initiate an investigation, refer the results to its BOC, and send notification of overpayment to Chaudhary. We find that the Department's mailing of its notice of overpayment to

Chaudhary on August 7, 2019, and informing her "You Are Responsible For Repaying This SNAP Overpayment" is the act by the Department that initiated this action. We also agree with the appellate court that the posture of this case— divesting an existing recipient of her benefits and the Department never designating Chaudhary as the plaintiff—falls within the default rule. 2021 IL App (2d) 200364, ¶ 48.

¶ 57   We next address defendants' reliance on *Arvia v. Madigan*, 209 Ill. 2d 520 (2004), *People v. Orth*, 124 Ill. 2d 326 (1988), and *Smoke N Stuff v. City of Chicago*, 2015 IL App (1st) 140936, for the proposition that the party challenging the agency's determinations is the party who bears the burden during the administrative proceedings. These cases do not support defendants' position.

¶ 58   In *Arvia*, this court placed the burden of proof on a driver contesting a license suspension where the suspension was required by statute and the State provided an administrative hearing process to challenge the suspension. *Arvia*, 209 Ill. 2d at 540. This was necessary, as the burden of proof at the administrative hearing was provided for by the Code. *Id.* at 542 (citing 92 Ill. Adm. Code 1001.620 (2003) (zero tolerance petitioner carries the burden of proof)). Thus, the suspension occurred by operation of law rather than government action. *Id.*

¶ 59   Similarly, in *Orth*, a driver was contesting the summary suspension of his driver's license, and the court placed the burden on the driver. *Orth*, 124 Ill. 2d at 337. This court addressed the legislative intent of the statute providing recission only if the motorist took the positive step of making a written request for judicial hearing in the circuit court. *Id.* However, again, the summary suspension occurred by operation of law. *Id.*

¶ 60   *Smoke N Stuff* involved an administrative appeal to contest a government entity's initial action against a business. *Smoke N Stuff*, 2015 IL App (1st) 140936, ¶ 1. The city suspended a business license due to a tax law violation. *Id.* The court in *Smoke N Stuff* relied on the general rule that, because the business initiated the administrative appeal, it bore the burden of proof at the hearing to restore its license. *Id.* ¶ 15.

¶ 61   The distinguishing factor, as defendants acknowledge, is that the burden was assigned by local ordinance where the municipal code provided that the notice

constituted a *prima facie* case. See *id.* Thus, the code clearly indicated that the burden was on the party challenging the allegations in the notice.

¶ 62    In addition, the court in *Smoke N Stuff*, in applying the general rule, relied on *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497 (2006) (*per curiam*). *Marconi* involved a plaintiff police officer who took the initial step of applying for pension disability benefits, was denied them by the Board, and then appealed the denial. *Id.* at 500. This court stated specifically in *Marconi*, "[a]s the applicant for disability pension benefits, plaintiff had the burden of proof to establish his entitlement to either *** pension." *Id.* at 536.

¶ 63    We observe that there is a distinction between a party who appeals a benefit denial on application and a party who appeals and challenges an agency's determination to divest the party of a benefit the party already receives. *Id.* Thus, *Arvia*, *Orth*, and *Smoke N Stuff* do not help us determine the party with the burden in a case where a party challenges an agency's determination of an overpayment of benefits. Accordingly, we find defendants' reliance on those cases is misplaced.

¶ 64    We, however, find the reasoning in *Petrovic v. Department of Employment Security*, 2016 IL 118562, to be instructive in the present case. In *Petrovic*, an employee was advised that her employment was terminated because of her misconduct. *Id.* ¶ 5. She filed for unemployment, and the employer filed a protest. *Id.* ¶ 6. The unemployment claims adjuster denied the benefits. *Id.* ¶ 7. On appeal to the board of employment security, the denial was affirmed. *Id.* ¶ 9. On review by the circuit court, the decision was overturned. *Id.* ¶ 10. The Department of Employment Security, the board of review, and the Director of Employment Security appealed, and the appellate court reversed the circuit court, reaffirming the board of review's denial. *Id.* ¶ 11.

¶ 65    The *Petrovic* court addressed which party carried the burden of proving an employee's disqualification due to misconduct. *Id.* ¶ 28. This court observed that the appellate court has consistently held that the burden of establishing an employee's disqualification rests upon the employer who alleges that the employee was discharged for misconduct. *Id.* (citing cases). The court explained that, while it is true that a claimant bears the burden of establishing her initial eligibility for unemployment insurance benefits, this does not mean that an employee must prove the absence of a disqualifying event. *Id.* In the court's view, there was no reason to

change the well-established rule that an employer who asserts an employee's disqualification for benefits based on misconduct has the burden of proving such misconduct. *Id.*

¶ 66 Similarly, Chaudhary, as a SNAP recipient, having been previously approved and awarded SNAP benefits, was not required to prove the absence of an overpayment. Rather, the Department, which asserted Chaudhary's erroneous receipt of SNAP benefits in excess of her household maximum, initiated the action by notification and was required to carry the burden of proving such overpayment. See *id.*.

¶ 67 In support, we also find case law addressing the burden of proof in Social Security overpayment determinations instructive. Like SNAP benefit recipients, recipients of federal funds from the Social Security Administration are a vulnerable populace. In addition, the Social Security Act also does not designate which party bears the burden of establishing an overpayment and the amount of the overpayment. 42 U.S.C. § 301 *et seq.* (2018).

¶ 68 In *Wilkening v. Barnhart*, 139 Fed. App'x 715, 715 (7th Cir. 2005), the Social Security Administration (Administration) informed Wilkening that the Administration had overpaid her disability benefits. Wilkening pursued an administrative appeal, which found evidence of the overpayment. *Id.* at 717. She then sought judicial review. *Id.* The court concluded that the burden of proving the existence and amount of an overpayment should rest with the Administration. *Id.*

¶ 69 In *McCarthy v. Apfel*, 221 F.3d 1119, 1124 (9th Cir. 2000) (citing *Cannuni v. Schweiker*, 740 F.2d 260, 263 (3d Cir. 1984), and *United States v. Smith*, 482 F.2d 1120, 1124 (8th Cir. 1973)), the court observed that, although the Social Security Act does not designate which party bears the burden of establishing the fact and amount of overpayments, each circuit to consider the issue has held that the Commissioner of Social Security (Commissioner) has this burden. The court joined these circuits and held that the Commissioner bears the burden of proving the fact and amount of overpayment. *Id.*

¶ 70 As set forth above, we find that where the statute is silent the default rule applies in administrative proceedings to divest a recipient's benefit, such that the party initiating the action carries the burden. Here, the Department initiated the action by

sending Chaudhary a notification of overpayment and informing her that she was responsible for repaying the $21,821 SNAP overpayment. Accordingly, we hold that the Department carries the burden of proof in overpayment proceedings.

¶ 71                    2. The Code, Including the Appeal Process, Does Not
                    Implicitly Vitiate the Department's Burden of Proof

¶ 72     Defendants contend that the Code, as a whole, implicitly places the burden of proof on Chaudhary to prove the Department's determination was incorrect. In support, defendants primarily rely on the appeal process and its provisions to show that Chaudhary carries the burden of proof.

¶ 73     Defendants assert that the Code provisions relating to SNAP overpayment collection procedures are in direct contrast to provisions relating to disqualifying a recipient from SNAP benefits altogether for an intentional violation. Defendants point out that, in a determination of intentional violation, the Department must initiate the administrative proceeding pursuant to section 14.300. 89 Ill. Adm. Code 14.300 (2001). Further, the Code requires the Department to prove by clear and convincing evidence that an intentional violation occurred. *Id.* § 14.340. Defendants argue that it is clear that the legislature placed the burden on the Department in disqualification hearings but did not show such an intent in the SNAP overpayment collection process.

¶ 74     However, we find important distinctions in the Code's reference to a suspected intentional violation of the program requiring the disqualification of a recipient and the Department's overpayment collection process that divests a portion of the recipient's benefits. First, regarding a disqualification due to an intentional violation of the program, section 14.300 provides that the Department may refer cases of suspected intentional violation for criminal prosecution. *Id.* § 14.300. Second, at a disqualification hearing, disqualification will only occur if there is clear and convincing evidence as determined by the hearing officer that the household member intentionally violated the program. *Id.* §§ 14.340, 14.370. Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question, and proof by a preponderance of the evidence means that the trier of fact must believe that it is more likely than not that the evidence establishes the proposition in question. *In re*

*Meyers*, 616 F.3d 626, 631 (7th Cir. 2010). An evidentiary standard that is greater than the preponderance is required to reduce the risk of an erroneous disqualification. *In re D.T.*, 212 Ill. 2d 347, 361-62 (2004) (finding that, where the interests at stake are substantial, a higher burden than a preponderance is required, and in those cases a clear and convincing standard is imposed).

¶ 75 　　　We note that in the determination of an overpayment and subsequent divestment of a portion of the benefit there are no possible criminal implications. Further, the standard of proof, as the ALJ informed Chaudhary, was the preponderance of the evidence rather than the more exacting standard of clear and convincing evidence for disqualification. 89 Ill. Adm. Code 14.340, 14.370 (2001).

¶ 76 　　　It is clear that the legislature was aware of the substantial result of a full disqualification from the program and required the heightened burden prior to disqualification. Yet we see no intent, either implicitly or explicitly, that the legislature intended to place the burden of proof in overpayment proceedings on a vulnerable population such as SNAP recipients. See *Glispie*, 2020 IL 125483, ¶ 10 (finding that in construing a statute it is proper to consider the reason for the law, the problem sought to be remedied, the goals to be achieved, and the consequences of construing the statute one way or another). Accordingly, defendants' arguments regarding the relevant provisions of disqualification and divestment of a benefit do not support their contention.

¶ 77 　　　We now turn to defendants' assertion that the appeal provisions of the Code also implicitly provide that Chaudhary, as the one who is appealing the Department's determination, carries the burden of proof. 89 Ill. Adm. Code 14.10 (2001). Defendants rely on section 14.22(a), which provides that "[t]he appellant shall have the opportunity to: (1) [p]resent evidence and witnesses in the appellant's behalf" and "(2) [r]efute testimony or other evidence and cross-examine witnesses." *Id.* § 14.22(a). In defendants' view, the fact that section 14.22(a) gives the appellant a right to affirmatively present evidence and witnesses and to cross-examine witnesses implies that the burden of proof rests with the benefit recipient who is appealing the Department's overpayment determination. Defendants further maintain that section 14.60, which provides that the Department may collect an overpayment with no prove-up if an appeal does not proceed, also implies that the Department does not bear the initial burden of proof. *Id.* § 14.60.

¶ 78 Contrary to defendants' assertions, the language in sections 14.22(a) and 14.60 does not vitiate the Department's burden of proof. Rather, sections 14.22(a) and 14.60 define the contours of the appeal process, which is the only opportunity for a benefit recipient to challenge the Department's SNAP overpayment determination. Nothing in the language of the statutes indicates or implies that the appeal process alleviates the Department's burden of proof.

¶ 79 In addition, defendants fail to acknowledge that section 165.10 provides specifically that "[t]he Illinois Department of Human Services (Department) *initiates action* to recover overpayments." (Emphasis added.) 89 Ill. Adm. Code 165.10 (2002). Thus, the plain language of the Code refutes defendants' contention that Chaudhary's appeal initiated the action and implicitly placed the burden on her. See *Robinson*, 2022 IL 127236, ¶ 17 (finding that the most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning). In fact, this section of the Code, together with the Department's own assertion that the burden falls on the party who initiated the action, confirms the burden rests on the Department.

¶ 80 Further, although focusing on different administrative codes, we find *Scott v. Department of Commerce & Community Affairs*, 84 Ill. 2d 42 (1981), to be instructive. In *Scott*, this court held that when the appellant is challenging an agency determination to divest a benefit, the burden of proof belongs to the agency. *Id.* at 53. The *Scott* court observed that the Department of Commerce and Community Affairs (Department of Commerce) misconceived the purpose and intent of the hearing provided by the Housing Authorities Act (Ill. Rev. Stat. 1979, ch. 67½, ¶ 4) and the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, ¶ 1010). *Scott*, 84 Ill. 2d at 52. The court noted that the Department of Commerce interpreted the relevant "statutory provisions as requiring only that the Department [of Commerce] inform the commissioners of the reasons why it proposes their removal; the commissioners are then entitled to a hearing at which they bear the burden of establishing the absence of cause for their removal." *Id.*

¶ 81 The *Scott* court recognized that the Department of Commerce overlooked relevant provisions of the Illinois Administrative Procedure Act, which impose upon the Department of Commerce a greater obligation in contested cases, under which the rules of evidence in civil cases would be followed and a party would be

allowed to conduct cross-examination. *Id.* at 53. The court determined that implicit in the right of cross-examination is the requirement that there be witnesses and testimony presented. *Id.* The court also determined that the application of the rules of evidence in civil cases imposes upon the Department of Commerce the obligation to establish, in the first instance, a *prima facie* case. *Id.* The court explained that Illinois courts have uniformly enforced the rule in administrative agency cases that the moving party has the burden of proof. *Id.*

¶ 82    Thus, we reject defendants' contention that the Code, and specifically the appeal process, implicitly placed the burden of proof on Chaudhary. Similarly, as in *Scott*, here, the Code provided for witnesses, testimony, and cross-examination and that the Department, in the first instance, initiated the action. Accordingly, we find that the Department carried the burden to present a *prima facie* case of the SNAP overpayment determination and maintained that burden throughout the appeal process. See *id.*; 89 Ill. Adm. Code 14.23 (2001) (requiring that a hearing be conducted in a manner best calculated to conform to substantial justice).


¶ 83                            3. The Department Is the Entity With
                                    Access to Relevant Information

¶ 84    We next address defendants' argument that, because Chaudhary had access to relevant information as to where her ex-husband, Ramzan, lived during the overpayment period, the burden of proof was properly placed on her by the ALJ. We disagree.

¶ 85    Defendants contend that Chaudhary was in a better position than the Department to have information specific to where Ramzan resided. Defendants also point out that the regulations provided Chaudhary with prehearing protection that included a meeting with a representative to go over the Department's evidence to understand the reasons for its determination. See 89 Ill. Adm. Code 14.11, 14.12 (2001).

¶ 86    We observe, that in the case at bar, the record shows that the notification and the prehearing meeting only informed Chaudhary that the Department found that she and her "husband" should have been on the same account for SNAP benefits. She was not aware that the Department would be relying on evidence regarding her

and Ramzan's mailing addresses during the overpayment period. Thus, as far as this prehearing protection is concerned, it failed Chaudhary.

¶ 87    In addressing who has access to relevant information, we first note that the Department is responsible for determining that an overpayment has occurred and it obviously has superior access to the records it used to make this determination. 89 Ill. Adm. Code 165.10 (2002). To make this determination, the Department has a myriad of public resources that include access to the Illinois Department of Employment Security, Social Security Administration, United States Department of Labor, and Internal Revenue Service records. The Department also has internal provisions that allow the Department to conduct a yearly state income tax match, where the Department's records are matched with the Illinois Department of Revenue records to obtain possible sources of unreported income. 89 Ill. Adm. Code 117.90 (2013). In addition, the Code provides the Department with the ability to match its records with new hire information reported by employers to discover unreported earned income of persons receiving assistance. 89 Ill. Adm. Code 117.91 (2020). On the other hand, benefit recipients have no such access to public sources of information and, thus, are at an obvious disadvantage.

¶ 88    Second, the Department also has expertise compared to the general SNAP population, including Chaudhary, who by nature of the program are those with disabilities; who are elderly; or may have limited education, resources, access to representation, and English proficiency. See Ctr. on Budget & Policy Priorities, Illinois Supplemental Nutrition Assistance Program (Apr. 25, 2022), https://www. cbpp.org/sites/default/files/atoms/files/snap_factsheet_illinois.pdf [https:// perma.cc/NN6F-H6RE]. As noted by the *amici curiae*, many SNAP recipients who file an appeal are unrepresented at the hearing. See *The Justice Gap: The Unmet Civil Legal Needs of Low-Income Americans*, Legal Services Corp. (Apr. 2022), https://justicegap.lsc.gov/ [https://perma.cc/ANX6-WDVE]; Lyz Riley Sanders *et al*., Colo. Ctr. On Law and Policy, *Barriers, Errors, & Due Process Denied*, at 16 (Mar. 2022), https://cclponline.org/wp-content/uploads/2022/03/SNAP-Administrative-Hearing-Report-final.pdf [https://perma.cc/5NSL-4WJQ]. SNAP administrative hearings are formal legal proceedings that occur on record and involve the submission of evidence, examination and cross-examination of witnesses, and opening and closing statements. Moreover, they involve the legal framework of federal and state statutes and regulations and policies that govern the

administrative hearing process. In these proceedings, the Department is represented by an appeals coordinator, who has great experience and knowledge of the SNAP program rules and of Department policy manual provisions. Indeed, here, Chairez, representing the Department, has the title "Executive I" with over 13 years of experience, while Chaudhary appeared *pro se*. This imbalance in representation and advantage to the Department supports our determination that the Department is the entity with access to relevant information. See 31A C.J.S. *Evidence* § 190 (Nov. 2022 Update) (the party with greater expertise and access to relevant information should bear the evidentiary burdens of production of evidence and persuasion).

¶ 89    Third, as observed by the appellate court, the Department would not have to expand its prehearing procedures. 2021 IL App (2d) 200364, ¶ 54. Under current procedures, the Department must first make an overpayment determination before there can be any appeal. *Id.* Thus, at the appeal hearing, it need not necessarily do more than present and authenticate the relevant information and evidence from its overpayment determination. *Id.*; see also *Petrovic*, 2016 IL 118562, ¶ 28 (finding that placing the burden on the employer, rather than the employee, thus imposes the burden of proof on the entity who has access to the relevant evidence); *Hooper v. Talbot*, 343 Ill. 590, 593 (1931) (determining that it is reasonable and just to impose the burden of proof on the individual who is in possession of such proof, rather than requiring the other party to prove a negative).

¶ 90    Accordingly, we find that, as the Department is the party that initiated the action and the party responsible for determining the overpayment, it is the entity with access to relevant information. Consequently, we hold that the Department carries the burden of proof in SNAP overpayment proceedings. See *Petrovic*, 2016 IL 118562, ¶ 28; *Scott*, 84 Ill. 2d at 53. Finally, to the extent that *Smoke N Stuff*, 2015 IL App (1st) 140936, suggests that the burden of proof lies with the recipient beneficiary, it is now overruled.

¶ 91    We need not address the parties' due process concerns. Our holding that the burden of proof was with the Department negates the question of whether Chaudhary was entitled to notice on that issue. Further, as acknowledged by the appellate court, allowing Chaudhary time to supplement the record provided her with the opportunity to respond, thus providing a fair hearing on her administrative

appeal. 2021 IL App (2d) 200364, ¶ 58.

¶ 92                    C. The ALJ's and the Secretary's Decisions Were
                              Against the Manifest Weight of the Evidence

¶ 93        We next address defendants' assertion that the ALJ's and the Secretary's
       decisions were not against the manifest weight of the evidence because there was
       overwhelming evidence in the record to support the finding that Ramzan lived with
       Chaudhary at the White Oak address during the overpayment period. Defendants
       posit that, at the administrative hearing, Chairez authenticated and explained the
       evidence that Ramzan lived at the White Oak address. Defendants contend that the
       evidence sufficiently showed how the Department calculated the SNAP
       overpayment amount, thus establishing that Chaudhary received an overpayment
       and was responsible for repaying $21,821. Defendants further contend that
       Chaudhary's documentary evidence simply conflicted with the Department's and
       that the Secretary properly weighed the conflicts in the Department's favor. We
       disagree.

¶ 94                                  1. Standard of Review

¶ 95        The reviewing court reviews the decision of the administrative agency. *Wade
       v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). The
       Secretary, as the head of the Department, reviewed the ALJ's decision and made
       the final decision. See 89 Ill. Adm. Code 14.70(a) (2001) ("[f]ollowing the hearing,
       a Final Administrative Decision will be made by the Secretary that either upholds
       or does not uphold the appealed action"). The standard of review depends on the
       issue presented, whether it be one of law, one of fact, or one of law and fact. *City
       of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05 (1998).
       The Secretary's decision here turned on a question of fact—whether Ramzan lived
       at the White Oak address at the relevant times such that he should have been
       included in Chaudhary's SNAP account—and is reviewed under the manifest
       weight of the evidence standard. *Kouzoukas v. Retirement Board of the Policemen's
       Annuity & Benefit Fund of Chicago*, 234 Ill. 2d 446, 463 (2009). The Secretary's
       factual findings are *prima facie* true and correct and will not be disturbed unless
       they are against the manifest weight of the evidence. *Id.* An administrative agency

decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

¶ 96
### 2. The Secretary's Confirmation of the Department's Overpayment Determination Was Not Supported by the Record

¶ 97    Defendants contend that there was evidence in the record to support the ALJ's and the Secretary's finding that Ramzan lived with Chaudhary at the White Oak address during the relevant time, from May 2015 through December 2017. Defendants contend that this determination was established at the administrative hearing, where Chairez authenticated and explained the evidence and by the records showing how the Department calculated the overpayment amount. Defendants take issue with the fact that Chaudhary produced much of her evidence after the administrative hearing when she had gained the benefit of the Department's testimony and evidence and the ALJ's comments. Furthermore, Chaudhary's documentary evidence conflicted with the Department's, and it was the Secretary's prerogative to weigh the posthearing submissions and the conflicts in the evidence in defendants' favor. Finally, defendants maintain that, instead of according deference to the Secretary's findings, the circuit court improperly reweighed the evidence and the appellate court repeated that mistake by conducting its own analysis of the evidence and substituting its judgment for that of the Secretary's.

¶ 98    Although it is true that the Secretary's decisions should be afforded considerable weight, they are not immune from review. The *Kouzoukas* court noted that, " '[e]ven under the manifest weight standard applicable in this instance, the deference we afford the administrative agency's decision is not boundless.' " *Kouzoukas*, 234 Ill. 2d at 465 (quoting *Wade*, 226 Ill. 2d at 507). This court has observed that, when reviewing an administrative agency's decision, we may put aside any findings that are clearly against the manifest weight of the evidence. *Id.* Such is the case here.

¶ 99    Defendants relied on the Department's evidence allegedly showing Ramzan resided at the White Oak address, including SNAP payments to that address to Chaudhary and Ramzan on separate accounts from May 2015 to December 2017,

post office verification of the address as Ramzan's mailing address dated in 2018, state records showing both Chaudhary and Ramzan with vehicles registered there in 2018, registration of Yasmar, Inc., with Ramzan and Chaudhary as officers filed with the Illinois Secretary of State in 2019, property records showing that Ramzan had owned the property in 2004 and 2006, and Social Security records showing the receipt of benefits for Ramzan's child from a prior marriage.

¶ 100    In addressing the Department's evidence, we find that the post office verification contains no evidence of where Ramzan lived during the overpayment period. The verification request was a blank form that was sent by the Department to the United States postmaster, who completed it on February 9, 2018, and returned it to the Department. The verification specified that Mr. Ramzan currently receives mail at the White Oak address. It contains no information about where Mr. Ramzan received mail at any other time.

¶ 101    The vehicle registrations that the Department relied upon are also from outside the overpayment period, as the registrations for the vehicles are dated February 8, 2018. Further, nothing on the face of the documents indicates the source of the information. In fact, Chairez testified, "I don't even know where they get this information because I'm not familiar with the system that has this stuff."

¶ 102    The Department also submitted documents related to Ramzan's company, Yasmar, Inc., that purported to support a finding that Ramzan resided at the White Oak address during the overpayment period. First, Chairez testified that he had received those documents from BOC, but they were not otherwise identified. Second, the documents were dated 2019 and 2020, outside of the overpayment period. Third, they were internally inconsistent, as one contained the White Oak address, another contained an address in Bloomingdale, Illinois, and a third contained an address in Glendale Heights, Illinois. All that can be gleaned from this evidence is that, at some point in time, Ramzan and Chaudhary were listed as officers in the corporation and it was registered at the White Oak address.

¶ 103    The Department introduced documents referred to as property records apparently showing that Ramzan once owned White Oak. There is nothing in these documents that is remotely close to the time frame of the overpayment, as the records are from 10 years prior to the overpayment period. Further, nothing on the face of the documents indicated their source. Indeed, the ALJ asked "But you're

not sure where this document was generated from?" Chairez answered, "That's correct. I don't see the source." Here, we find that the Department's evidence was not sufficiently authenticated and does not support the determination that Ramzan resided at the White Oak address during the overpayment period.

¶ 104    Next, we observe that the Secretary's final administrative decision stated that the "Department submitted income documents and calculations and an abundance of state/government records to show that Adult A (Ramzan) was residing at Address A (White Oak) and that an overpayment occurred." The Secretary did not acknowledge or address Chaudhary's subsequent submissions to the ALJ.

¶ 105    Thus, the record supports the conclusion that the ALJ and the Secretary relied solely on evidence the Department submitted, which was from outside the overpayment period. The Department maintains that the investigation, including its search for evidence, naturally took place after the overpayment period ended. Hence, those records were printed or produced on a date after the overpayment period but "could still reflect Ramzan's activity or status during the overpayment period."

¶ 106    However, we find that, no matter when it was obtained, the evidence still needs to show that Ramzan resided at the White Oak address during the overpayment period. Any inference that might be drawn from evidence outside of the overpayment period about where Ramzan lived during the overpayment period was unsupported by the evidence in the record.

¶ 107    To compound these errors, the Secretary ignored the Department's own evidence showing that Ramzan did not live with Chaudhary but only used the White Oak address for mail. A Department summary page for Ramzan's account lists Morton Road as his residence and White Oak as his mailing address. In fact, the Department's own document established that the Department keeps both a mailing address and a residential address, even if the same, for all recipients. In addition, the Department's evidence included a copy of Ramzan's driver's license from the overpayment period, which listed the Morton Road address.

¶ 108    We note that Chaudhary submitted an abundance of evidence that supported her argument that Ramzan did not reside at the White Oak address during the overpayment period. The documents included Ramzan's statement that he resided

at the Morton Road address, as well as other evidence listing the Morton Road address, including a residential lease from 2013-20, a state of Illinois driver's license issued to Ramzan on August 14, 2013, with an expiration date of June 19, 2017; an approval letter to Ramzan from the Benjamin School District for free meal services for his daughter for the 2015-16 school year; copies of envelopes with United States postal stamps showing delivery to Ramzan in 2017; and electricity bills addressed to Ramzan in 2013 and 2016.

¶ 109     We reject defendants' argument that Chaudhary's evidence was entitled to less weight because it was submitted after the administrative hearing. The Department's overpayment determination notification stated that the reason for the overpayment was that Chaudhary and Ramzan were married, not whether Ramzan was living at White Oak. Contrary to its assertion, before the appeal, Chaudhary was not aware that the issue was anything other than that Ramzan was listed as her "husband" in the Department's notification. It is not surprising that Chaudhary's evidence revolved around her divorce from Ramzan, thus establishing that they were not husband and wife, after 2012. As noted by the appellate court, considering the notification described in error that Ramzan was Chaudhary's husband, it was proper for the ALJ to allow Chaudhary to respond to the Department's evidence and arguments by supplementing the record after the hearing. 2021 IL App (2d) 200364, ¶ 68. Chairez, representing the Department, did not object.

¶ 110     It is apparent from the record that the Secretary did not consider any of this evidence, as established by the Secretary's written decision. Although the Secretary's final decision is due considerable deference, the failure to discuss the substance of Chaudhary's supplemental evidence was unreasonable, and her subsequent decision was against the manifest weight of the evidence. In addition, we note the competent and corroborated evidence that Ramzan lived at the Morton Road address. Thus, the appellate court did not reweigh the evidence but, rather, properly set aside a decision that was unsupported by any competent evidence, meaning that the opposite conclusion was clearly evident. See *Abrahamson*, 153 Ill. 2d at 88 (administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident). We find that the evidence is entirely consistent with both Chaudhary's and Ramzan's assertions that he used the White Oak address only as his mailing address and that he did not reside

there between May 2015 and December 2017.

¶ 111        3. The Secretary's Credibility Determination Was
              Unreasonable and Not Supported by the Record

¶ 112        Defendants contend that the Secretary's determination that Chaudhary's testimony lacked credibility should be affirmed because it was established by the record and deserves substantial deference. This contention is without merit, and we reject the Secretary's credibility determination.

¶ 113        The Secretary found that Chaudhary's testimony "lack[ed] credibility," noting that "[i]t is highly implausible" that she did not know that Ramzan once owned and lived at the White Oak address, "it is highly unlikely" that others collected the mail every day and that she was "clueless" or "completely oblivious" to the fact that Ramzan got his mail there, and her testimony that she and Ramzan never lived together during their marriage contradicted her written statement that they had not lived together "since" their divorce.

¶ 114        Defendants assert that the ALJ, who heard Chaudhary testify, found that she was not credible and that the Secretary agreed with that finding. But the record reveals that the ALJ made no credibility finding. Thus, the ALJ did not make a specific credibility determination for the Secretary to adopt.

¶ 115        Second, the Secretary's credibility determinations were based upon immaterial discrepancies, such as whether Ramzan had owned and resided at the White Oak address prior to 2012, whether Chaudhary and Ramzan had lived together prior to 2012, and whether someone other than Chaudhary collected and disbursed the mail at the White Oak address. The answer to these questions is not relevant to the determination of whether Ramzan resided at the White Oak address during the overpayment period.

¶ 116        Third, Chaudhary's testimony was consistent in that she asserted from the beginning that she was not married, that she had a household of four individuals, and that Ramzan did not live with her but resided elsewhere during the alleged overpayment period. Moreover, minor discrepancies in a witness's testimony are not unusual (*In re M.W.*, 232 Ill. 2d 408, 438 (2009)) and do not destroy the

witness's credibility. See *Longanecker v. East Moline School District No. 37*, 2020 IL App (3d) 150890, ¶ 45 (finding an inability to recall minor events that took place nearly six months prior to a hearing did not detract from detailed and credible testimony about events that occurred that same day).

¶ 117 Again, although the Secretary's final decision is due considerable deference, the credibility determination by the Secretary was based on testimony on nonmaterial issues and was not supported by the record. Accordingly, we find that the Secretary's findings were against the manifest weight of the evidence. See *Kouzoukas*, 234 Ill. 2d at 465 (when reviewing an administrative agency's decision, this court may put aside any findings that are clearly against the manifest weight of the evidence (citing *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 142 (2009))).

¶ 118                    D. Defendants' Challenges to Portions
                          of the Appellate Court's Decision

¶ 119 As a final matter, we note that defendants take issue with portions of the appellate court's analysis and argue that they were based on improper considerations. We find it unnecessary to address these challenges. Our task is to review the judgment of the appellate court, regardless of whether the reasoning it employed was correct. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 44 (citing *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995)); *In re Rita P.*, 2014 IL 115798, ¶ 51. For the reasons set forth above, we find that the appellate court made the right decision when it affirmed the circuit court's reversal of the Secretary's final administrative decision.

¶ 120                              III. CONCLUSION

¶ 121 We are mindful that care should be taken to ensure against an erroneous deprivation of critical nutritional benefits that jeopardize the health, wellness, and stability of low-income state residents. Thus, we find that, where the Department initiates an action to divest a SNAP recipient of benefits and the statute is silent as to the burden of proof, the default rule applies. Accordingly, we hold that the burden of proof lies with the Department in overpayment cases and remains with the

Department throughout the appeal process. We find that the Secretary's final administrative decision was against the manifest weight of the evidence because it was unsupported by competent evidence and the opposite conclusion was clearly evident—that Ramzan did not live at the White Oak address during the overpayment period. We also find that the Secretary's credibility determination was against the manifest weight of the evidence. Consequently, we hold that the appellate court did not err when it affirmed the circuit court's judgment reversing the Secretary's final administrative decision.

¶ 122       Appellate court judgment affirmed.

¶ 123       Circuit court judgment affirmed.

¶ 124       Department decision reversed.

¶ 125       JUSTICES ROCHFORD and O'BRIEN took no part in the consideration or decision of this case.