2024 IL App (2d) 240125-U
No. 2-24-0125
Order filed May 2, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-1344 |
| CHRISTIAN RASK, | ) ) ) | Honorable Julia A. Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in granting the State's petition to deny the defendant pretrial release.

¶ 2    The defendant, Christian Rask, appeals from the trial court's order granting the State's petition to deny him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of P.A. 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). We affirm.

¶ 3                                                I. BACKGROUND

¶ 4      In 2022, the defendant was arrested and charged by indictment with three Class 3 felonies: unlawful possession of a firearm without a firearm owner's identification card (FOID) (430 ILCS 65/2(a)(1) (West 2022)), unlawful use of weapons (720 ILCS 5/24-1(A)(7)(iii) (West 2022)), and unlawful use of explosive material (225 ILCS 210/5010 (West 2022)).  The defendant was also charged with three related Class A misdemeanor offenses.  The trial court set the defendant's bail at $100,000.  The defendant has been in custody ever since.

¶ 5      On October 3, 2023, the defendant filed a motion for the trial court to remove the money bail condition of his pretrial release.  In response, the State filed a petition to deny the defendant pretrial release, alleging that he posed a danger to the community.

¶ 6      On October 20, 2023, following a hearing, the trial court denied both the defendant's motion and the State's petition.  The trial court determined that amendments to the Code (725 ILCS 5/110-6.1, 110-5(e) (West 2022)) did not prevent it from maintaining a previously ordered money bail as a condition of release.  The defendant appealed from that order.  This court reversed, explaining that the Code precluded the trial court from reimposing a monetary bond as a condition of the defendant's pretrial release.  See *People v. Rask*, No. 2-23-0447 (2024) (unpublished order under Supreme Court Rule 23(b)).  We remanded the case for a hearing on the defendant's motion for review of his pretrial conditions and the State's verified petition to deny the defendant pretrial release.  *Id.*

¶ 7      On February 2, 2024, on remand, the trial court held a hearing on the parties' motions.  By agreement the defendant presented his proffer first, as the hearing was prompted by his motion to review his pretrial conditions.  The defendant argued that he legally purchased the weapons and explosive materials at issue in this case.  He acknowledged that, subsequent to those purchases,

his FOID card and his Illinois explosives license were revoked. The defendant noted that he was generally a law abiding citizen. He acknowledged that, in 2015, he was found guilty of obstruction of a peace officer. However, it was a misdemeanor and a nonviolent offense. He was sentenced to one year conditional discharge and 100 hours of community service, which he successfully completed. The defendant argued that any comments by his family to police officers regarding his mental health was hearsay. Further, he was not a threat to the community because all his weapons and related materials were confiscated by the police and he no longer had the credentials to purchase such materials. He was never seen with a weapon outside his home or shooting any weapons, and he had never caused an explosion. The explosives found in his home were essentially fireworks. He was compliant with the law. Any threat he posed could be mitigated by conditions of release ordering that he not possess weapons or any other illegally obtained materials. Even if the restraining order was lifted, he had no FOID card and thus could not legally purchase any weapons or ammunition.

¶ 8    The State proffered the police synopsis, which related as follows. From 2019 to the present, the Batavia police department (police) had taken numerous reports of domestic issues from the residence where the defendant lived with his mother, Diane Rask. Diane had stated that the defendant had mental health issues. Over the years, she reported that the defendant often ranted about politics, government, various religious faiths, and conspiracy theories. He made threatening statements, such as stating that government officials and the police need to be "shot and killed," that he would burn down the house with Diane in it, that he was going to shoot Vice President Kamala Harris, and that he would not mind shooting an FBI agent if one came to the door. The defendant occasionally made physical contact with Diane, such as slapping her face or poking her

in the head, but she never wanted to pursue criminal charges. Diane had occasionally provided audio recordings of the defendant's rants to the police.

¶ 9　The synopsis further indicated that, in June 2021, the defendant was issued an explosives license. In December 2021, the FBI attempted to interview the defendant at his residence but he yelled profanities at the agents. In June 2022, the police mailed FOID revocation paperwork to the Illinois State Police, who subsequently revoked the defendant's FOID card. The State Police sent the defendant information related to the revocation of his FOID card, namely: surrendering his FOID card, transferring all firearms in his possession, and completing a firearm disposition record, as required by law (see 430 ILCS 65/9.5(a) (West 2020)). In July 2022, the State Police informed the police that, when the State Police went to the defendant's house, the defendant refused to surrender his FOID card. The defendant told the State Police that he transferred all his firearms to a friend but refused to provide the information necessary to complete the firearm disposition record. The State Police left the residence because the defendant was irate and noncompliant.

¶ 10　Thereafter, the police filed for an emergency firearms restraining order. The emergency order was granted and a hearing was set. The police obtained arrest warrants for the defendant based on his failure to surrender his FOID card and failure to complete the firearm disposition record. The police also obtained a search warrant for the defendant's residence to retrieve firearms or related materials and his FOID card.

¶ 11　On July 28, 2022, the defendant was arrested and the police, the State Police, and the Kane County bomb squad searched the defendant's residence. They recovered two rifles, one handgun, considerable amounts of ammunition, quarter sticks, half sticks, a glue gun, a mixing bowl with plug end caps for tubes, explosive precursor materials, and the defendant's FOID card and

explosive license. In the synopsis, the officer explained that, from the items collected, it was suspected that explosive devices were being manufactured and stored. The Kane County bomb squad was planning to conduct further testing of the materials, which could result in additional felony charges against the defendant related to the amount of explosive materials and illegal storage of explosive devices.

¶ 12    The State argued that the synopsis provided clear and convincing evidence that the defendant committed detainable offenses. The defendant had ample opportunity to surrender his FOID card and complete the firearm disposition record. At the time of the search warrant, the defendant was in possession of materials he was not entitled to possess. The State also noted that the defendant was currently engaged in litigation over the firearms restraining order and there was no guarantee that the order would stay in place. If the restraining order was revoked, there would be nothing preventing the defendant from obtaining firearms or other weapons upon release. The State also argued that it had shown the defendant posed a real and present threat to the safety of the community, as he had materials in his possession to make a bomb. Finally, the State argued that there were no conditions that could mitigate the threat posed by the defendant because there was nothing to physically prevent the defendant from obtaining weapons and explosive materials.

¶ 13    Following argument, the trial court granted the State's petition to detain the defendant. The trial court found that the evidence proffered in the synopsis was sufficient to find that the defendant committed the charged qualifying offenses. The trial court also found that the defendant posed a real and present threat to the safety of the community. The trial court acknowledged that Diane's statements to the police were hearsay but noted that she lived in the same house as the defendant and her statements were reliable. Diane's statements, and the audio recordings provided to the police, showed that the defendant was a threat to the well being of others and himself. He

threatened to shoot government officials and the police. The defendant also went on long rants making threats to people of faith, raving about politics, and espousing conspiracy theories. The trial court also noted that Diane's complaints about the defendant's behavior started in 2019 and her continued reports showed that his behavior had escalated by 2022. The trial court concluded that the following specific and articulable facts demonstrated that there was a real and present threat to the community: (1) the defendant's escalating behavior and his intentions as stated to his mother; (2) his refusal to cooperate with the surrender of his FOID card, weapons, and explosive materials; and (3) his conduct when dealing with the FBI, the State Police, and the police.

¶ 14 Finally, the trial court addressed whether there were conditions of release that could mitigate the threat posed by the defendant. The trial court acknowledged that the defendant did not have an extensive criminal history. Nonetheless, the trial court found that it could not guarantee, even without an FOID card, that the defendant would not have access to weapons or explosive materials. Even if the defendant was placed on electronic home monitoring or GPS, that would not guarantee that others would not provide the defendant with weapons, ammunition, or explosive materials or that the defendant would not have such items delivered to his home. The trial court concluded that there were no conditions of release that could mitigate the threat to the safety of the community. The trial court thus removed the defendant's financial condition of bail and granted the State's petition to deny the defendant pretrial release.

¶ 15 The defendant filed a timely form notice of appeal and subsequently filed a memorandum under Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023). The State filed a response in opposition to the defendant's appeal.

¶ 16                                    II. ANALYSIS

¶ 17    In Illinois, all persons charged with an offense are eligible for pretrial release.  725 ILCS 5/110-2(a), 110-6.1 (West 2022).  Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations.  *Id.* §§ 110-2(a), 110-6.1(e).

¶ 18    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).  "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***."  *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 19    We review the court's decision to deny pretrial release under a bifurcated standard.  *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.  Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks.  *Id.*  A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented.  *Id.*  We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release.  *Id.*  An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court.  *Id.*

¶ 20    On appeal, the defendant argues that the State failed to prove by clear and convincing evidence that he posed a real and present threat to the community.  The defendant argues that he was a law abiding citizen and there was no evidence to support a finding that he would try to obtain

new firearms, ammunition, or explosive materials in violation of court orders while on pretrial release. His compliance with the sentence for his 2015 conviction and his litigation directed against his firearms restraining order shows his respect for the law and a trial court's orders. Further, while the defendant acknowledges that hearsay is allowed at pretrial detention hearings, he argues that his alleged tirades as reported by his mother are not clear and convincing evidence that he posed a threat to the community.

¶ 21    In considering whether the defendant poses a real and present threat to the safety of any person or the community, the trial court may consider the following factors: (1) the nature and circumstances of any offense charged; (2) the history and characteristics of the defendant, including the defendant's psychological history; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim; (7) whether the defendant is known to possess or have access to any weapons; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or other form of supervised release from custody; and (9) any other factors, including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)). *Id.* § 110-6.1(g)(1)-(9).

¶ 22    In the present case, we cannot say that the trial court's finding that the defendant posed a threat to the community was against the manifest weight of the evidence. While the defendant complied with the sentence for his 2015 conviction, the evidence also showed that his threatening behavior had been escalating since 2019. Further, the evidence showed that he did not comply with the legal requirements when his FOID card was revoked. He refused to surrender his FOID card or fill out the firearm disposition record. The police were forced to secure a search warrant

to retrieve his FOID card and confiscate his weapons. These facts belie his argument that he has a respect for the law and will abide by any trial court orders. Further, the trial court acknowledged that Diane's reports to the police were hearsay but considered that she lived in the same house as the defendant and was thus reliable. She audio recorded some of the defendant's alleged tirades and played those recordings for the police. Diane's reports showed that the defendant had threatened government officials, police officers, and family members, and that his rhetoric was violent and showed extremist tendencies. The search of his house showed that the defendant was in possession of weapons and explosive materials when he no longer was legally allowed to possess such items. Based on the foregoing, the trial court's determination that the defendant posed a threat to the community was not unreasonable. As such, the trial court did not abuse its discretion in ordering the defendant to be detained until trial. *Trottier*, 2023 IL App (2d) 230317, ¶ 13 (trial court's ultimate determination of whether defendant should be detained will not be disturbed absent an abuse of discretion).

¶ 23    In so ruling, we note that in his form notice of appeal, the defendant checked the box indicating that he was also appealing on the basis that the State failed to meet its burden to prove by clear and convincing evidence that he committed detainable offenses. He also, while not checking the related box, included a statement that the State failed to prove that there were no conditions of release that could mitigate his threat to the community. However, these issues were not raised in his memorandum on appeal and thus they are abandoned. See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22 ("We deem the filing of a memorandum to reflect that an appellant has elected to abandon any arguments that were raised in his or her notice of appeal but not also pursued in the memorandum").

¶ 24                                III. CONCLUSION

¶ 25   For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 26   Affirmed.